STATE of Missouri, Respondent,

v.

Elmer L. JEFFERSON, Appellant.

No. SD 30600.

Missouri Court of Appeals,
Southern District,
Division Two.

May 12, 2011.

Margaret M. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Elmer L. Jefferson ("Appellant") appeals his conviction of two counts of distributing a controlled substance, and one count of resisting arrest. Appellant contends the trial court erred in permitting improper opinion testimony and in conducting the trial without Appellant's presence. Finding no merit to Appellant's claims, we affirm the judgment of the trial court.

## Facts and Procedural History

In this appeal, Appellant does not challenge the sufficiency of the evidence to support his convictions. Accordingly, we set forth only those facts necessary to address Appellant's points. In doing so, we view the evidence in the light most favorable to the jury's verdicts. *See State v. Newberry,* 157 S.W.3d 387, 390 (Mo.App. S.D.2005).

On May 17, 2006, David Holder ("Holder") was acting as a confidential informant for the Bootheel Drug Task Force. Narcotics Agent Jamie Decker ("Agent Decker") instructed Holder to drive to the corner of Commercial and Baldwin Street in Kennett, Missouri, and attempt to purchase twenty dollars' worth of crack cocaine from anyone who was selling at that location. Agent Decker had previously installed audio and video recording equipment in Holder's vehicle and provided him twenty dollars in cash.

On Baldwin Street, while still in his vehicle in the line of traffic, Holder was approached by an individual who sold Holder twenty dollars' worth of crack cocaine. The drug sale was brief and, in the video recording of the transaction, the seller's face was partially obscured by the driver-side, front-window pillar of Holder's vehicle, and by a cap the seller was wearing. Holder did not know the man.

Both Holder and Agent Decker returned to the Kennett Police Department where Agent Decker reviewed the video recording of the drug sale. Agent Decker did not recognize the man from Holder's description or from his own review of the

video recording. Agent Decker then described the man to Kennett Police Officer Jeremy Yates ("Officer Yates"), who was out on patrol.

Officer Yates then drove to Baldwin Street to see if he could locate and identify the suspect who had just sold crack cocaine to Holder. Officer Yates located an individual near Baldwin Street that matched Agent Decker's description of the suspect. Officer Yates recognized this individual as Appellant. Officer Yates returned to the Kennett Police Department and reported this information to Agent Decker. Officer Yates also reviewed the video recording of Holder's purchase of crack cocaine, and confirmed the suspect was the person Officer Yates had just seen at the Baldwin Street location.

A short time later, and at Agent's Decker's direction, Holder returned a second time to Baldwin Street and again purchased twenty dollars' worth of crack cocaine from the same suspect. The second drug sale was also brief, but the seller's face was momentarily visible in the video recording from Holder's car.

On March 15, 2007, Kennett Police Officers Alan Campbell ("Officer Campbell") and Brandon Moore ("Officer Moore") executed a felony arrest warrant on Appellant. During the arrest, Appellant became agitated, nervous and struggled with the officers. The officers were forced to use pepper spray on Appellant and call for assistance. Appellant told Officers Campbell and Moore that "if he could of got his shotgun things would of been different." Appellant was charged with two counts of class B felony distribution of a controlled substance, in violation of section 195.211 RSMo Cum.Supp.2005, and class B felony

resisting arrest, in violation of section 575.150 RSMo Cum.Supp.2006.

On April 23, 2010, during the pre-trial conference, Appellant continually disrupted the proceedings. The trial court repeatedly told Appellant he had to wait his turn to speak. After the prosecutor and Appellant's counsel finished presenting their motions to the court, the trial court permitted Appellant to present additional matters and submit written documents with respect to those matters. After the trial court listened to Appellant and received Appellant's written documents, the trial court overruled Appellant's claims of "double jeopardy, the conflicts of interest, and the jurisdiction." The trial court stated: "I think the case can proceed properly here today and we're gonna proceed with the case here today." The trial court's ruling led to a tirade by Appellant.[1]

Initially, the trial court repeatedly told Appellant to stop as he continued to assert the proceeding was illegal and he was prejudiced by ineffective assistance of counsel. Then, the trial court warned:

The Court: Okay. It's my job as the judge to make sure you get a fair trial here today based on the evidence that's presented.

[Appellant]: Um-hum.

The Court: And that's what I want to do. We have to make sure that justice is done and that's my job here today. The reason I wanted to take this up in pre-trial is so that you understand, Mr. Jefferson, that when we're out there in front of that jury I'm not going to allow any outbursts by you. If you want to discuss something with your attorney, obviously, you have that right. But I want to make sure that you understand

---

1. Appellant's tirade constituted ten pages of the twenty-five pages in the pre-trial confer- ence transcript.

that no outbursts, no talking out loud, none of that's gonna be allowed in front of that jury.

[Appellant]: Actual prejudice.

The Court: There's not gonna be any, any mistrials with regard to that.

[Appellant]: That's prejudice.

The Court: Mr. Jefferson, Mr. Jefferson,—

[Appellant]: That is prejudice, I'm not gonna,—

The Court: Well,—

[Appellant]: You're not gonna force me into a court proceeding.

The Court: If you—

[Appellant]: That's actual prejudice.

The Court: If you continue I will have you removed from the courtroom, if you have an outburst in front of the jury.

Appellant continued to argue over the judge's instructions to stop. The trial court then asked Appellant: "Do you want to be present in that courtroom today whenever we have this jury trial because—" to which Appellant interrupted and responded, "You cannot make me—[.]" When the trial court again warned Appellant he would be removed from the courtroom, Appellant responded the court could not do that and he was entitled to effective assistance of counsel. The trial court again warned Appellant:

The Court: Mr. Jefferson, I've warned you once already.

[Appellant]: And I'm warnin' you, sir, no.

Bailiff: Do not threaten the judge.

[Appellant]: I'm not threatenin' it, I'm just lettin' you know. I'm under the authority of the United States and you [sic] not gonna sit up here and deny me my Constitutional Rights, no way.

The Court: I'm gonna warn you a second—

[Appellant]: No way.

The Court:—time.

[Appellant]: No way. No.

The Court: If you have any more outbursts—

[Appellant]: Your Honor, I got a right to stand up for my rights.

The Court: At this time, would you, please, Mr. Jefferson,—

[Appellant]: File my papers and you do what you want to do.

Bailiff: Mr. Jefferson.

[Appellant]: Just file my papers. I ain't got time to listen to you. File my papers.

The Court: Mr. Jefferson, I'm gonna order—

[Appellant]: I don't have an attorney.

The Court: I'm gonna order you removed from the proceeding—

[Appellant]: File my papers.

The Court: We're gonna proceed with the jury trial today.

[Appellant]: No. You ain't gonna have no trial without me.

The Court: Yes, we are.

[Appellant]: Well, go ahead then. I'm not in it, that's not my attorney.

The Court: This is your attorney.

[Appellant]: No.

The Court: She'll be present.

Appellant continued to argue with the Court regarding his request that the papers he filed be returned until defense counsel, Rebecca Burke, interjected and asked Appellant:

Ms. Burke: I would like for you to be present in the courtroom during the trial. Will you remain in the courtroom?

[Appellant]: I'm entitle [sic] to effective against, assistance of counsel. I'm callin' the court actual prejudice and there is no way you [sic] gonna sit up

here and overstep me from my Constitutional Rights when I'm tellin' you I'm not satisfied with my attorney and you sittin' up there with those lawsuits in your hand, you cannot do it. You cannot sit over a proceeding like that. So,—

The Court: Are you asking—

[Appellant]: I said, that's not my attorney. She's not representin' me properly and you are actual prejudice and you can't make, you're not gonna push all my rights in the gutter.

The Court: Mr. Brumley is gonna escort—

[Appellant]: I don't care about Mr. Brumley or nobody else. You don't sit up and control my life like that. When you're wrong, you're wrong. I'm not—

Don't touch me.

Bailiff: This is what I'm gonna do,—

[Appellant]: You ain't gonna do nothin'. Let's go.

Bailiff: You're gonna stop fightin'—

[Appellant]: Do it, do it.

Bailiff:—or I'll do what I got to do—

[Appellant]: I don't need to fight you.

And I'm gonna tell you somethin', I will walk anywhere and I'm not afraid, you understand me.

Bailiff: You come out of here, now.

[Appellant]: You don't stand and tell me to come out of nothin' when I'm tellin' you I'm standin' for my rights.

Prosecutor: Go get the Sheriff.

The outburst continued until Appellant was escorted from the room. Following an off-the-record conference, the trial court stated:

The Court: We'll go back on the record. We're back on the record in the case of State of Missouri verses [sic] Elmer Jefferson. I just want to make the record clear that due to Mr. Jefferson's unwillingness to follow the court instructions, having been given multiple warnings here during pre-trial that outbursts were not going to be allowed, that the Court has ordered him removed from the courtroom at this time and we will proceed with trial today without Mr. Jefferson.

After a short recess, Appellant's counsel orally requested a continuance "to see if [Appellant] would participate" on another day. The trial court overruled Appellant's request for a continuance. No other request for relief was presented to the trial court. Appellant was removed from the pre-trial conference sometime before 10:10 a.m.; jury selection, trial, jury deliberations, and the jury's verdicts were all completed by 3:30 p.m. that same day.

The trial court told the jurors Appellant was not present in the courtroom because he "has chosen ... not to be here today...." Evidence at trial included the testimony of Agent Decker, Officer Yates, Holder and Officer Campbell.

Officer Yates testified Agent Decker had requested his assistance with a drug investigation. Agent Decker provided Officer Yates with a description of "a black male ... up around Baldwin Street ... with a black cap." The black cap was described to Officer Yates as having the letters "CAT"—as in "Caterpillar Equipment Company"—on it. Officer Yates testified he went to Baldwin Street and saw a person matching this description. He confirmed the person was wearing a black ball cap with the letters "CAT" on it. He testified this person was Appellant and Appellant was previously known to him. He also identified State's Exhibit 7 as being a photograph of Appellant. Officer Yates was then asked if he was able to confirm the identity of the individual on the video recording. Appellant's counsel objected that this question called for "a conclusion on his part to an ultimate fact in

this case...." The objection was overruled. Officer Yates then testified the person in the video recording of the first drug sale was Appellant.

Holder testified that on May 17, 2006, at the request of Agent Decker, he went to Baldwin Street in Kennett to "buy dope." Holder drove his personal vehicle and upon arriving at Baldwin Street, was approached by a man described as an "elderly man, black man, short hair, thin built [sic], medium height." Holder also recalled the man as having facial hair, but could not remember what he was wearing. Holder testified the man who sold drugs to him the second time was the same man who had sold drugs to him the first time. Holder was shown State's Exhibit 7, the photograph of Appellant, but could not identify him as the person who sold the drugs to him as the photograph was too dark for Holder to see. Holder testified he subsequently saw the person he bought drugs from in the Dunklin County Jail after Holder himself had been arrested on a DUI charge. Holder testified he had learned Appellant's name and he responded Appellant's name was "Buzzy, uh, Jefferson, isn't it?"

The jury found Appellant guilty of the charged offenses. He was subsequently sentenced as a prior drug offender to twelve years in prison on each of the distribution convictions, and four years in prison on the resisting arrest conviction, with the distribution sentences to run concurrently with one another and consecutively to the resisting arrest sentence, for an aggregate sentence of sixteen years in prison. This appeal followed.

Appellant asserts two claims on appeal. First, he contends the trial court erred in permitting Officer Yates to testify that the person captured on the video recording selling drugs to Holder was Appellant as it was improper opinion testimony because it invaded the province of the jury on an ultimate issue to be determined by the jury. The State contends "the trial court did not abuse its discretion because Officer Yates had prior familiarity with Appellant and his identification of Appellant on the tape supplemented the officer's personal observations made at the scene of the drug buy." In Appellant's second point, Appellant argues the trial court erred in removing Appellant from the courtroom based on Appellant's disruptive conduct during a pre-trial conference without Appellant knowingly, intelligently and voluntarily waiving his right to be present at trial, and without giving Appellant a subsequent opportunity to reclaim his right to be present at trial. The State contends this point should be reviewed for plain error and the trial court did not plainly err in conducting the trial without the presence of Appellant.

The primary issues for determination are:

1. Did the trial court abuse its discretion in permitting Officer Yates to testify the person selling drugs on the video recordings was Appellant?

2. Did the trial court plainly err in conducting the trial without Appellant's presence following his disruptive behavior during the pre-trial conference?

### No Abuse of Discretion in Admitting Officer Yates' Opinion Testimony

First we determine whether the trial court abused its discretion in permitting Officer Yates to testify the person captured on the video recording selling drugs to Holder was Appellant.

### Standard of Review

A trial court's admission of the testimony of a lay witness is reviewed for

an abuse of the court's discretion. *State v. Bivines,* 231 S.W.3d 889, 891–92 (Mo.App. W.D.2007). "[D]iscretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Forrest,* 183 S.W.3d 218, 223 (Mo. banc 2006). On direct appeal, we review "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* at 223–24. "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.* at 224.

## Analysis

■ Officer Yates' testimony was "ordinary identification testimony," and did not involve any "scientific, technical or other specialized knowledge." *Bivines,* 231 S.W.3d at 893 n. 2. Therefore, Officer Yates was a lay witness when he testified Appellant was the person shown in the first video recording selling crack cocaine to Holder.

A lay witness generally is not permitted to give opinion testimony about a matter in dispute because the jury and lay witness are ordinarily in equal positions to reach an accurate opinion about the matter. *State v. Winston,* 959 S.W.2d 874, 877 (Mo. App. E.D.1997). However, consistent with the general rule, a lay witness is permitted to give opinion testimony about a matter in dispute when the lay witness' opinion is based on knowledge not available to the jury and would be helpful to the jury in reaching the jury's own opinion. *Bivines,* 231 S.W.3d at 893. More specifically, a lay witness' opinion as to identity is admissible if there is a basis for concluding the witness had a specific opportunity to observe something that makes it more likely the

witness can correctly identify a person than the jury. *Id.*

Here, there was a logical and reasonable basis for concluding Officer Yates was more likely to correctly identify the person shown in the video recording selling crack cocaine to Holder than was the jury. The jury, unlike Officer Yates, never had the opportunity to see Appellant in person. The only evidence that allowed the jury to observe Appellant's appearance was from viewing the two video recordings of the drug sales, and the photograph taken of Appellant shortly after his arrest on March 15, 2007. Notably, Appellant's appearance was concealed to some degree in both. The photograph was dark, making Appellant's facial features difficult to see, and he is wearing a neck brace. The drug sales captured in the video recordings were brief, the seller's face is partially obscured by the driver-side, front-window pillar of Holder's vehicle, and by a cap the seller is wearing.

In contrast, Officer Yates possessed knowledge not available to the jury. Appellant was previously known to Officer Yates before the May 17, 2006 incident, and Officer Yates again had the benefit of seeing Appellant in person on May 17 shortly after Holder's first purchase of crack cocaine. Thus, Officer Yates' prior familiarity with Appellant, his personal observations of Appellant on May 17, 2006, combined with his knowledge of Appellant's appearance and clothing as described by Agent Decker on May 17, provided a strong basis for concluding Officer Yates was more likely than the jury to correctly identify the person captured on the video recordings selling crack cocaine to Holder.

Appellant relies primarily on *State v. Presberry,* 128 S.W.3d 80 (Mo.App. E.D. 2003), in which the court held it was plain error to permit two officers to identify a

person shown in surveillance tapes and photographs as the defendant, where neither officer had prior familiarity with the defendant, and the court further held the error was prejudicial because there was no other identification evidence linking the defendant to the crime. As our discussion above demonstrates, *Presberry* is distinguishable from this case because, unlike the officers in *Presberry,* Officer Yates had prior familiarity with Appellant and thus, there was a basis to conclude he was more likely than the jury to correctly identify Appellant. *Id.* at 89.

These facts demonstrate a logical and reasonable basis for believing Officer Yates was more likely to correctly identify the person shown selling crack cocaine to Holder in the video recording than was the jury. Therefore, Officer Yates' testimony did not invade the province of the jury, and the trial court's ruling was not clearly against the logic of the circumstances and so unreasonable as to indicate a lack of careful consideration. The trial court did not abuse its discretion in permitting Officer Yates to identify Appellant in the video recordings. Appellant's first point is denied.

### No Plain Error in Conducting the Trial Without Appellant

Next, we determine whether the trial court plainly erred in conducting the trial without Appellant's presence following his disruptive behavior during the pre-trial conference.

### Standard of Review

A reviewing court will not convict a trial court of an error that the trial court was given no opportunity to correct, and a point raised on appeal must be based upon the theory of the objection as made at trial. *State v. Wolf,* 326 S.W.3d 905, 907 (Mo.App. S.D.2010). Here, Appellant did not preserve the error alleged in his second point for appellate review. Appellant's only objection to the trial court's ruling removing Appellant from the courtroom was an oral motion to continue the trial to see if Appellant would participate on another day. However, Appellant now contends the trial court erred in removing Appellant from the courtroom without Appellant knowingly, intelligently and voluntarily waiving his right to be present at trial, and without giving Appellant a subsequent opportunity to reclaim his right to be present at trial.

As such, review is available only for plain error pursuant to Rule 30.20.[2] Plain error review is discretionary and involves a two-step analysis. *State v. Jennings,* 322 S.W.3d 598, 601 (Mo.App. S.D. 2010). First, this Court considers the facts and circumstances to facially determine if there was plain error—meaning "evident, obvious and clear" error. *Id.* Only if this Court identifies plain error do we proceed to the second step of determining whether manifest injustice, or a miscarriage of justice resulted. *Id.* Appellant has the burden to establish the trial court committed plain error, and that there has been a manifest injustice or a miscarriage of justice. *State v. Royer,* 322 S.W.3d 603, 606 (Mo.App. S.D.2010).

### Analysis

"A defendant in a criminal trial has the constitutional right to be present in the courtroom during every stage of the trial." *State v. Solomon,* 7 S.W.3d 421, 426 (Mo.App. S.D.1999) (citing *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)). However, a defendant can lose this right if, "after he has

---

**2.** All rule references are to Missouri Court Rules (2010).

been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen,* 397 U.S. at 343, 90 S.Ct. 1057. This right can be reclaimed as soon as the defendant is willing to conduct himself consistent with the decorum and dignity required in judicial proceedings. *Id.*

■ "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." *Id.* Thus, the trial court "is given discretion to determine what constitutes a disruption and what action is taken when confronted with a disorderly defendant." *State v. Hatch,* 54 S.W.3d 623, 628 (Mo.App. W.D. 2001) (citing *State v. Bowens,* 964 S.W.2d 232, 239 (Mo.App. E.D.1998)).

■ Here, we find no evident, obvious, and clear error in the trial court's decision. The record reflects the trial court made significant efforts to indulge Appellant by giving him an opportunity to voice his concerns and file documentation. The trial court also attempted to clearly communicate to Appellant that his disruptive behavior, if continued, would result in his absence from the courtroom during trial. Despite the trial court's repeated warnings, Appellant continued to interrupt the trial court during the pre-trial proceedings, refused to answer the court's direct questions, and repeatedly asserted arguments the court had already rejected. We find it significant the trial judge's warnings specifically put Appellant on notice that his continued outbursts would bar him from being present during the trial proceedings

that day, not just from that pre-trial proceeding.

We also find important the fact that the trial commenced just after Appellant's removal. It was not plain error for the trial court to conclude that in this short time span Appellant likely would not change his behavior and Appellant's disruptive behavior would continue and prohibit the trial proceedings from being conducted. In fact, the entire trial was completed that same day as the jury returned its verdict and was dismissed at 3:30 p.m. later that same day. Appellant's conduct in the pre-trial conference, before the jury was impaneled, made clear he intended to continue his disruptive conduct before the jury.

We must also bear in mind the trial judge, who was present and could see and hear Appellant's demeanor and tone, was in a better position to judge the effect of Appellant's conduct on the impending trial, and gauge the likelihood Appellant's conduct would continue during trial. For these reasons, sufficient discretion is given to a trial court in determining what constitutes a disruption and in deciding what actions to take when confronted with a disorderly defendant. *Solomon,* 7 S.W.3d at 426.

■ In the context of the record before us, the fact the trial court did not expressly advise Appellant he could return to the courtroom if he was willing to conduct himself properly, and specifically give Appellant an opportunity to reclaim the right to be present, was not evident, obvious and clear error. Appellant's opportunity to reclaim the right to be present was implicit in what the trial court expressly told Appellant; i.e., that he would be removed from the courtroom if he continued his disruptive conduct. From the trial court's warnings, Appellant could infer he could return when he was prepared to

conduct himself properly. *Allen* does not expressly require the trial court to advise a defendant of the defendant's ability to reclaim the right to be present, or to affirmatively give a defendant an opportunity to reclaim the right to be present. Further, in the circumstances of this case, there was no reason to believe that advice or opportunity was necessary or desired by Appellant. Counsel for Appellant certainly did not believe the advice or opportunity was necessary or desired as no request for either was made, and Appellant never requested to be permitted to return to the courtroom. Again, the fact the jury's verdict was completed by 3:30 p.m. that same day makes it is less likely Appellant would have had an uncommunicated change of heart in that short period of time.[3]

Our conclusion is supported by the Eastern District's decision in *State v. Sahakian*, 886 S.W.2d 178 (Mo.App. E.D.1994). There, the trial court removed a defendant for disruptive conduct during the prosecutor's opening statement. During the three-day trial, the trial court did not inform the defendant he could return to the courtroom if he agreed to conduct himself properly, and did not ask the defendant if he would return and not disrupt the proceedings. *Id.* at 181. The Eastern District held the trial court's failure to inform the defendant of his right to return to the courtroom and failure to ask the defendant if he would return was not error, plain or otherwise, because the defendant (1) was amply warned he would be removed before he was in fact removed; (2) chose to absent himself from his trial; and (3) did not express any desire to participate in his trial. *Id.*

Finally, to conclude error on this point would result in an endorsement of Appellant's volitional conduct. "An accused person, placed upon trial and protected by constitutional and statutory safeguards, cannot be allowed to defy the processes of the law, paralyze the proceedings, and turn them into a farce, taking advantage of his own wrong." *Bowens*, 964 S.W.2d at 240.

Appellant primarily relies on *United States v. Ward*, 598 F.3d 1054 (8th Cir. 2010), where the Eighth Circuit found the district court violated the defendant's right to be present when it removed the defendant from the courtroom before the *voir dire* of the prospective jurors for refusing the trial court's command to stop talking to his attorney. *Id.* We find, however, the facts of that case are distinguishable from the case at hand because that trial lasted three days, and the defendant's disruptive conduct was limited to talking with his attorney, which the court noted an absolute ban on the defendant talking to counsel is, in some circumstances, a violation of the defendant's right to counsel. *Id.* Additionally, we note decisions of the federal district and intermediate appellate courts, though meriting our respect, are not binding on us. *Doe v. Roman Catholic Diocese of St. Louis*, 311 S.W.3d 818, 823 (Mo.App. E.D.2010).

■ "An accused cannot claim the benefit of constitutional rights while at the same time engaging in disruptive conduct that makes it exceedingly difficult to carry on a trial." *Bowens*, 964 S.W.2d at 239. Appellant was disruptive and thereby lost his right to be present. *See Allen*, 397 U.S. at 343, 90 S.Ct. 1057. In these circumstances, we find no reason to depart from the principles announced in Missouri

---

**3.** We note that Appellant's mindset certainly was the same slightly one month later on May 28, 2010, when he was removed from his sentencing for disruptive conduct before the trial court could even finish placing the case numbers on the record.

case law. As we find no plain error in the trial court's decision to proceed without Appellant's presence, we need not proceed to the second step of determining whether a miscarriage of justice resulted. Appellant's second point is denied.

The judgment of the trial court is affirmed.

SCOTT, C.J. and BATES, J. Concur.