

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112081 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | Cause No.  2211-CR00250-01 |
| | ) | |
| ANDREW J. PERREY | ) | Honorable Daniel G. Pelikan |
| | ) | |
| Appellant. | ) | FILED: March 4, 2025 |

Opinion

Andrew J. Perrey (Defendant) appeals from the trial court's judgment following jury trial convictions on one count first-degree burglary and multiple counts of stealing, including one count Class D felony stealing property valued at $750 or more, one count Class A misdemeanor stealing, and one count Class D misdemeanor stealing property valued at less than $150.  Point One challenges the sufficiency of the evidence for felony stealing property valued at $750 or more.  Specifically, Defendant argues the State adduced no evidence as to the value of Victim's bicycle, attached accessories, and laser tape measure at the time they were stolen, making the valuation merely speculative.  Points Two, Three, and Four allege that the trial court erred in allowing three law enforcement officers (collectively Officers) to identify Defendant in surveillance footage of the offenses, and still images taken from that footage, because each of their testimonies, respectively, invaded the province of the jury, which could decide for itself

whether the footage depicted Defendant. Because the State adduced sufficient evidence from Victim's testimony and sales receipt that Defendant stole items with an aggregate value of $750 or more, we deny Point One. The testimony of law enforcement officers who are familiar with a defendant is an exception to the general rule that lay witnesses are prohibited from offering an opinion on a disputed issue. Therefore, because Officers here were well-familiar with Defendant and testified from their personal knowledge in a way that aided the jury given Defendant's altered physical appearance, the trial court did not err in admitting their identifications of Defendant from the surveillance footage and still images. Moreover, even if impermissibly admitted, Defendant was not prejudiced by the admissions. Thus, we deny Points Two, Three, and Four. Accordingly, we affirm the trial court's judgment.

## Background

Defendant was indicted on March 16, 2022, with one count first-degree burglary, one count felony stealing of $750 or more, one count class A misdemeanor stealing, and one count Class D misdemeanor stealing. The State charged Defendant as a persistent offender due to two separate convictions in 2018.

On January 3, 2022, Defendant and an accomplice broke into the parking garage of a condominium complex. Victim's "pack-and-store" bicycle with affixed water bottle cage and her laser tape measurer were stolen from the garage. Defendant and his accomplice also stole a garage door opener, a $200 bicycle, and broke into other vehicles. Additional evidence adduced about the value of Victim's stolen items will be recounted in the discussion section.

The condominium maintained surveillance cameras in its parking garage and captured these offenses. Law enforcement subsequently obtained this footage. A condominium maintenance employee posted the surveillance footage showing the two suspects on social media, hoping someone might recognize them. Officer H.P., who was not involved with the

investigation, saw this social media posting and recognized Defendant because of previous "multiple interactions" with him that allowed Officer H.P. to clearly identify Defendant from the security footage. Officer H.P. informed one of the investigating detectives that that he could identify Defendant. The lead detective in the case forwarded an image from the surveillance footage to detectives in a neighboring police department, and these officers, Detectives A.F. and K.E., were also able to positively identify Defendant. Subsequently, Officer H.P. arrested Defendant while on patrol. At the time of his arrest, Defendant was wearing the same shoes and gold cross necklace visible in the condominium surveillance footage. A garage door opener taken from a resident's vehicle was later located at Defendant's residence.

Prior to trial, Defendant filed a motion in limine to exclude the testimonies of three officers—Officer H.P., Detective A.F., and Detective K.E.—identifying him from the video footage and stills from the footage on the grounds that the jury could identify Defendant, thus Officers were in no better position to identify Defendant than the jury. The motion was overruled.

The case proceeded to a jury trial. The State presented Officers' testimonies to the above-mentioned facts. Victim and the condominium maintenance employee testified, as did other victims whose property was stolen. Further facts relevant to this appeal are set forth in the discussion section below. After the State's evidence and Defendant's case-in-chief, the jury retired to deliberate. After deliberating and asking to review the surveillance footage, the jury found Defendant guilty on all charges. The trial court sentenced Defendant to a total of twenty-two years in prison. This appeal follows.

<u>Discussion</u>

**I.      Point One—The State Adduced Sufficient Evidence of the Value of Items Stolen**

In Point One, Defendant challenges the sufficiency of the evidence in regards to his conviction on the count for felony stealing $750 or more. On this count, Defendant was found guilty of stealing Victim's "pack and store" bicycle and a laser tape measurer. Defendant claims that the valuation of these items was merely speculative and insufficient to prove stolen property of at least $750 pursuant to § 570.020, RSMo (2016),[1] in that the only information provided to the jury was a purchase sales receipt for the bicycle and its accessories and a printout of a similar model laser tape measurer from the Home Depot website, plus the age of the items. We disagree. Victim's testimony and purchase receipts sufficiently proved the range of the stolen items' value from which a reasonable juror could find the aggregate value was at least $750.

A.      <u>Standard of Review</u>

In reviewing the sufficiency of the evidence to support a conviction and a trial court's denial of a motion for judgment of acquittal, we determine whether the State presented sufficient evidence from which a reasonable juror might have found the defendant guilty of all elements required for conviction. *State v. Johnson*, 461 S.W.3d 842, 844 (Mo. App. E.D. 2015) (internal citation omitted). We accept as true all evidence supporting the jury's verdict and disregard all contrary evidence and negative inferences. *Id.* We do not reweigh evidence. *State v. Rouner*, 679 S.W.3d 141, 145 (Mo. App. W.D. 2023) (internal quotation omitted).

B.      <u>Facts</u>

The following evidence as to the value of the stolen items was introduced at trial: Defendant stole Victim's "pack and store" bicycle on January 2, 2022. This model bicycle was

---

[1] All statutory references are to RSMo (Cum. Supp. 2021), unless otherwise specified.

made from lightweight material that folded into itself for easy transport for someone of Victim's smaller size. Victim testified she rode the bicycle only ten or twelve times after purchasing it at a local bicycle store on July 1, 2021, approximately six months before the theft. The bicycle was in good condition and was undamaged prior to the theft. Victim testified she paid $720 for the bicycle, $24.99 for the water-bottle cage that was permanently affixed to the bicycle, and $79 for a lifetime service agreement. In support of Victim's testimony, the State produced the purchase sales receipt. Victim also testified that she repurchased the same model bicycle in a different color on April 9, 2022, three months after the theft, because her stolen bicycle was never recovered. The price of the same model bicycle had increased to $800. The State produced the receipt for that replacement purchase as well.

Defendant also stole a Bosch-branded laser tape measurer from Victim's vehicle. The State was unable to produce the sales receipt, but Victim testified she bought the laser tape measurer at Home Depot for approximately $100 and it was well-used. Victim testified that, shortly after the offense, she found the same tool listed for sale on Home Depot's website for $79.97.

C.      Analysis

The State charged Defendant under § 570.030, which states in relevant part:

1. A person commits the offense of stealing if he or she: (1) Appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion;
. . .
5. The offense of stealing is a class D felony if: (1) The value of the property or services appropriated is seven hundred fifty dollars or more[.]

The valuation of the stolen property is governed by § 570.020, RSMo (2016), which provides:

(1) Except as otherwise specified in this section, "value" means the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime. If the victim is a merchant, and the property is a type that the merchant

5

sells in the ordinary course of business, then the property shall be valued at the price that such merchant would normally sell such property[.]

The State bears the burden to prove each and every element of a charged offense beyond a reasonable doubt. *Woolford v. State*, 58 S.W.3d 87, 89 (Mo. App. E.D. 2001).

Market value at the time and place of the offense may be ascertained in a variety of ways. *State v. Miller*, 466 S.W.3d 635, 636 (Mo. App. S.D. 2015) (internal citation omitted). While the best practice is asking the owner what she believes the market value was at the time of the offense, the State may also prove the value using direct and circumstantial evidence, informed by "reasonable inference[s] from [the jury's] common sense and life experiences." *Johnson*, 461 S.W.3d at 845 (citing *State v. D.W.N.,* 290 S.W.3d 814, 820 (Mo. App. W.D. 2009)). Although Defendant correctly notes that the "purchase-price-plus-age" test has come under scrutiny,[2] Missouri courts have consistently found that the State meets its statutory burden under § 570.020, RSMo (2016), so long as there is evidence form which a jury reasonably could find the ***aggregate*** of the stolen items totaled to the minimum amount for the charged offense. *See id.* (finding "the aggregate value was obviously in excess of $500" where the "many items" included an Apple laptop computer purchased three years prior for $2,700, a Dell laptop computer purchased four months before for $700, jewelry that the victim testified was worth less than $200, an iPad tablet, and an iPhone); *see also Rouner*, 679 S.W.3d at 146–47 (finding the evidence "easily exceeded $150" when the owner testified he paid at least $150 for missing wedding bands, estimated the replacement cost was between $300 and $400). In comparison, Missouri courts have found insufficient evidence of value where the State proved only that the defendant stole a vehicle that was six-to-seven years old, drove the vehicle approximately one

---

[2] *Johnson* noted but did not rely on an observation in another case that § 570.020, RSMo (2016), was intended by the legislature to require more evidence than just purchase price plus time elapsed since the offense, which was known as the purchase-price-plus-age test. 461 S.W.3d at 844.

mile, and then parked the vehicle in a parking lot. *State v. Watts*, 688 S.W.3d 632, 635 (Mo. App. W.D. 2024). *Watts* distinguished its facts from *Johnson*, highlighting that whereas "*Johnson* involved multiple items with known purchase prices, one purchased just months before a theft[,] the only evidence in *Watts* "involve[d] a vehicle of unknown condition, and unknown purchase price, manufactured six or seven years prior to [the] theft." *Id.* at 637 (citing *Johnson*, 461 S.W.3d at 845).

Here, the State adduced evidence about the value of the stolen items through Victim's testimony as well as purchase receipts. Specifically, Victim produced the receipt showing she originally purchased the light weight "pack-and-store" bicycle for $720, the affixed water-bottle cage for $24.99 and a lifetime service agreement for $79 only six months before the theft for a total of $823.99.[3] Victim also testified and produced a purchase receipt when she purchased a replacement bicycle of the same model just three months after the offense for a higher amount of $800. Lastly, Victim testified that she had purchased the laser tape measurer for $100 and shortly after the offense found the same item listed for $79.97. Defendant did not object to Victim's testimony nor to the admission of the receipts. Even without receipts, which a victim often does not retain and which are not required for the State to prove its case, the testimony of a single witness, if deemed credible by the jury, is sufficient to support the valuation of stolen property. *Woolford*, 58 S.W.3d at 89 (finding the testimony of the victim was indefinite because the witness guessed the approximate value and offered no further corroboration of the value). Here, far from guessing an approximate value, Victim testified to specific purchase amounts and had the receipts to prove them. *See id.* Viewing the evidence in the light most favorable to the

---

[3] The parties do not reach the conclusion on whether the $79 lifetime service agreement for the bicycle is directly recoverable. Nevertheless, it may be relevant in the valuation calculus as the statute's relevant language classifies stealing as appropriation of "property or services." *See* § 570.030. Nonetheless, the value of the property stolen here exceeds the $750 statutory threshold without having to rely on the value of the service agreement.

7

conviction, as we must, Victim's testimony and sales receipt establish that the purchase price for the bicycle alone with taxes added up to $890.67. Contrary to Defendant's assertion that the State produced insufficient evidence of valuation, Victim provided ample evidence of the of the market value of the stolen items at the time of the offense. Moreover, evidence was adduced that served to show the stolen items did not depreciate substantially in value and that the value of replacement items was comparable to or surpassed the market value of the stolen items at the time they were originally purchased. In particular, Victim testified about how the price for the same model bicycle increased from $720 to $800 just three months after the theft—a significant increase in value that the jury was free to consider relevant to whether the State proved that Victim's gently used bicycle of the same model was worth something that, when totaled with the water-bottle cage and laser tape measurer, added up to over $750, and significantly more if the lifetime service agreement is also considered. Indeed, the State did not have to prove that Victim's bicycle alone was worth $750 at the time of the offense but only that in aggregate with all stolen items the total was at least $750. *See Johnson*, 461 S.W.3d at 845. As in *Rouner*, the State adequately proved a range from which the jury could make its final determination. *See* 679 S.W.3d at 146–47.

Regarding *Johnson*, we find the valuation evidence adduced by the State here more similar to the sufficient evidence in that case than to the insufficient evidence in *Watts*. Far from the lack of testimony in *Watts*, where the only evidence about the value of the stolen vehicle was that it was a vehicle manufactured six or seven years before the theft, here we have a similar factual scenario to *Johnson*, where there were multiple stolen items, including computers, tablets, phones, and jewelry, that were valued by different evidence, including but not limited to the purchase prices. *See Watts*, 688 S.W.3d at 637 (citing *Johnson*, 461 S.W.3d at 845). For

8

instance, *Johnson* relied heavily on the sound, common-sense judgment of the jury to know that a computer purchased three years prior to the theft for $2,700 and another computer purchased four months prior for $700 could reasonably be inferred to meet the threshold amount to satisfy the statutory valuation element. *Johnson*, 461 S.W.3d at 845. *Johnson*'s reliance on the jury's knowledge of everyday prices is rooted in well-established law. *See Johnson*, 461 S.W.3d at 845. Retail price may be proof of market price when dealing with goods regularly sold "on a more or less daily basis." *State v. Morgan*, 807 S.W.2d 209, 210 (Mo. App. E.D. 1991); *see also State v. Calicotte*, 78 S.W.3d 790, 795 (Mo. App. S.D. 2002). In this case, a bicycle and home improvement tool, albeit higher-end models, are sold on an almost daily basis and are not so uncommon that retail price on two different occasions fails to show a range of value satisfying the statutory requirement of $750 or more. We are not persuaded by Defendant's argument that the lightweight, foldable bicycle was so highly specialized as to be outside the realm of the jury's common understanding.

We decline to disturb the jury's determination of Victim's credibility and its assessment of the value of the stolen items. *See Johnson*, 461 S.W.3d at 845. Therefore, we find there was sufficient evidence from which a reasonable juror could have found Defendant guilty of stealing $750 or more when he stole Victim's bicycle and laser tape measurer. *See id.* at 844; *Morgan*, 807 S.W.2d at 210. Point One is denied.

## II. Points Two, Three, and Four—No Abuse of Discretion in Admitting Defendant's Identification by the Law Enforcement Officers

Because Points Two, Three, and Four may be resolved on the same grounds, we address them together. Defendant argues the trial court abused its discretion in admitting Officers' trial testimonies identifying him in surveillance footage and/or still images from that footage because the jury was capable of ascertaining Defendant's identity from that footage, thus Officers'

9

testimonies improperly invaded the province of the jury on a disputed matter. We disagree. Officers all had extensive history with Defendant such that they were uniquely able to testify that the man in the surveillance footage, with a beard, was the same as the clean-shaven man that the jury saw in person during the trial. Their personal familiarity with Defendant was therefore relevant in aiding the jury in its identification, and due to that familiarity, the Officers were more likely to correctly identify Defendant than the jury. Further, Officers' testimonies did not prejudice Defendant, as the jury was presented overwhelming evidence of guilt, including ample evidence identifying him as the perpetrator given that he was wearing the same clothes visible in the surveillance footage at the time of his arrest and, additionally, an item stolen from the parking garage was later found at his residence.

A.     Standard of Review

"The trial court has broad discretion in determining whether to admit or exclude evidence at trial." *State v. Wiggley*, 672 S.W.2d 243, 247 (Mo. App. E.D. 2023) (internal citation omitted). An abuse of discretion is found only when the decision to admit or exclude evidence is clearly against the circumstances and is so unreasonable and arbitrary as to indicate a lack of careful consideration. *Id.* (internal citation omitted). We will only reverse if the prejudice from improper admission of evidence is outcome-determinative, in that "there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence." *Id.* (internal citations omitted).

B.     Facts

The following evidence about the Officers relevant to Points Two, Three, and Four was adduced at trial. Officer H.P. was not involved in the investigation of the case. Officer H.P. testified that he identified Defendant in the surveillance videos on social media posted by the condominium staff. He testified that he had interacted with Defendant on at least four prior

10

occasions and recognized him from the footage based on those interactions. Officer H.P.'s interactions with Defendant were in close physical proximity, about two feet away, and for a duration of approximately fifteen to twenty minutes on each occasion. Officer H.P. informed Detective N.M.—the lead investigator on the case—about his identification of Defendant. Later, while on routine Patrol Officer H.P. recognized and arrested Defendant. At trial, Officer H.P. also identified Defendant in still photographs.

Like Officer H.P., Detective A.F. had significant history with Defendant, spanning five years. Detective A.F.'s last interaction with Defendant was only a few months prior to the offense. At trial, Detective A.F. identified Defendant in the video footage as well as in still photographs. Lastly, Detective K.E. testified that he recognized Defendant based on multiple prior interactions over a ten-year period and was familiar with Defendant's physical build and overall appearance. Detective K.E. also identified Defendant at trial in the video footage and still photographs.[4]

C.     Analysis

A lay witness, as in a witness that does not testify to any "scientific, technical," or specialized knowledge, is generally not permitted to give opinion testimony about a matter in dispute because the jury and lay witnesses are ordinarily similarly situated to reach an accurate opinion about the matter at issue. *State v. Jefferson*, 341 S.W.3d 690, 697 (Mo. App. S.D. 2011) (internal citations omitted). However, an exception to that general rule is that a lay witness can testify to a matter in dispute if the witness can provide knowledge to the jury that would be helpful in reaching its own conclusion. *Id.* (internal citation omitted). Specifically, a lay witness

---

[4] As the State notes, Defendant did not object to Detective K.E.'s identification of him in the surveillance footage at trial. However, Defendant's Point Three properly limited his challenge to Detective K.E.'s identification of him in the still image taken from the footage, to which he timely objected.

opinion on the identity of a defendant is admissible as there is a basis for concluding the witness had a specific opportunity to observe something that makes it more likely that the witness can correctly identify a person than the jury. *Id.* (citation omitted).

Here, Officers' identifications of Defendant assisted the jury in making its ultimate decision that Defendant was guilty of the charged offenses. *See id*; *State v. Gardner*, 955 S.W.2d 819, 824 (Mo. App. E.D. 1997). In *Gardner*, the quality of the surveillance tape was poor and the defendant's face was obscured at some point. 955 S.W.2d at 823, 825. The lay testimony of the officer involved in that case concerning the identity of the defendant on the videotape was deemed permissible because the officer could assist the jury in ascertaining the defendant's identity as their interactions spanned ten years and the officer was well-familiar with the defendant. *Id.* at 824–25. Here, although the quality of the video is of good quality, because Defendant's appearance in the surveillance footage was markedly different than how he appeared at trial, Officers' familiarity with Defendant in a variety of facial hair styles aided the jury in reaching its own identification. *See id.*

Officers' identifications of Defendant from the surveillance footage were permissible evidence as the jury was not in the same position as these officers that had numerous interactions with Defendant spanning five to ten years. *See id.*; *see also Wiggley*, 672 S.W.2d at 247; *Jefferson*, 341 S.W.3d at 697. Therefore, because the trial court did not commit error in admitting the evidence, we need not evaluate whether the error resulted in prejudice. *See Wiggley*, 672 S.W.2d at 247.

Finding no abuse of discretion, we deny Points Two, Three, and Four.

<u>Conclusion</u>

The judgment of the trial court is affirmed.

_____
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J., and
Virginia W. Lay, J., concur.

13