STATE of Iowa, Appellee,

v.

Richard A. MOORE, Appellant.

No. 60581.

Supreme Court of Iowa.

March 21, 1979.

Dennis F. Chalupa and Bradley McCall of Brierly, McCall, Girdner & Chalupa, Newton, for appellant.

Thomas J. Miller, Atty. Gen., and William R. Armstrong, Van D. Zimmer and Michael E. Sheehy, Asst. Attys. Gen., for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McCORMICK and LARSON, JJ.

REYNOLDSON, Chief Justice.

Defendant appeals from judgment entered on jury verdict convicting him of first-degree murder, a violation of section 690.2, The Code 1975. We affirm.

May 20, 1976, the body of Terri Williams Moore was discovered near an interstate exit ramp near Lynnville. She had been shot in the head and back. During the investigation authorities discovered Terri at some time had undergone a sex-change operation. Investigation resulted in a murder charge against defendant Richard A. Moore, Terri's husband of one week. Moore, arrested at his home in Colorado, was returned to Iowa for trial.

Trial court interrupted jury selection when defendant suddenly attempted to con-

fess and plead guilty. A competency proceeding was conducted pursuant to chapter 783, The Code. Defendant was found competent to stand trial. Trial resumed and defendant was convicted. From the record made the jury could find the following facts.

Defendant and Terri traveled to East Lansing, Michigan, for their honeymoon and stayed with Terri's friends. Several of these people knew Terri before her sex-change operation, when her name was Frank Felice. While in East Lansing defendant and Terri often argued. One night defendant told one of his hosts he was "going to blow her away" and explained this meant "shoot her." The next morning the couple left for Denver, several days ahead of schedule. Terri, fearing for her safety, asked her friends to notify police if she didn't call in two days. Less then twenty-four hours later defendant shot Terri and left her and her possessions on the roadside. Defendant had the murder weapon in his car while in Michigan. He was carrying it when arrested.

On appeal defendant contends his removal from the courtroom after several verbal outbursts violated his constitutional right of confrontation. He also claims trial court abused its discretion in admitting murder scene and autopsy photographs and should have instructed, on its own motion, on diminished capacity.

I. *Removal from courtroom.*

On the seventh day of the nine-day trial defendant was removed from the courtroom for about thirty minutes because he insisted on disrupting the proceedings. Defendant asserts this violated his right to confront adverse witnesses, a right protected by the sixth amendment to the United States Constitution.

During a state psychiatrist's testimony the following occurred:

Q. What, if any, was Richard Moore's response when he was told that you didn't believe him? A. He became somewhat glum when he got those messages, irritable, demanding and made threats, and within a short time was demanding his discharge and if he wouldn't get discharged he would take a hostage and leave.

THE DEFENDANT: You're a liar.

Trial court made no comment. The witness finished his answer and answered another question. Defense counsel requested a recess. Defendant said, "I think—take this court and shove it." Trial court ordered a recess that lasted thirty-five minutes.

Trial resumed and nine questions later this exchange occurred:

Q. Doctor, from the background I've given you earlier, in your testimony Mr. Moore has stated on repeated occasions that he works for the Denver Police Department and these—

THE DEFENDANT: Martin down there, Lieutenant Callig down there, too.

THE COURT: Mr. Moore, will you please remain silent. We will maintain order during—

THE DEFENDANT: This ain't a court.

THE COURT: —of this trial.

THE DEFENDANT: This is bullshit.

THE COURT: If you continue with your outbursts, you will be removed from this courtroom.

THE DEFENDANT: Remove me. Big deal. I ain't interested in your courtroom, flying your bombs and your bullshit. You want to bomb, you bomb it yourselves—

THE COURT: · May the record show that the defendant—

THE DEFENDANT: —or being your funky President.

THE COURT: —has been removed from the courtroom by the sheriff and the deputy sheriff. This trial will continue without the presence of the defendant being present.

About twenty-five minutes later trial court ordered another recess. When court convened ten minutes later defendant was present in the courtroom. He was in attendance during the remainder of the trial without incident.

The controlling case is *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Acknowledging the confrontation clause of the sixth amendment guarantees the right of an accused "to be present in the courtroom at every stage of this trial," the court held:

> [A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

397 U.S. at 343, 90 S.Ct. at 1060–61, 25 L.Ed.2d at 359. A careful reading of *Allen* discloses that disruptive behavior constitutes a *waiver* of a constitutional right. *Accord, Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (accused's knowing and voluntary absence after first day of trial "waived" sixth amendment right to be present), *quoted with approval in State v. Johnson*, 243 N.W.2d 598, 603 (Iowa 1976); *see State v. Blackwell*, 238 N.W.2d 131, 134–37 (Iowa 1976); *State v. Snyder*, 223 N.W.2d 217, 222 (Iowa 1974).

Viewed as a waiver of constitutional rights, defendant's conduct has to meet certain criteria. His relinquishment of the right to be present at his trial must be knowing, intelligent and voluntary. *Brady v. United States*, 397 U.S. 742, 747–48, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970). Courts indulge every reasonable presumption against waiver. *Collier v. Denato*, 247 N.W.2d 236, 239 (Iowa 1976). The burden is on the State to show a valid waiver by a preponderance of the evidence. *State v. Hilpipre*, 242 N.W.2d 306, 309 (Iowa 1976). Our review of trial court's decision to remove defendant requires an assessment of the totality of the circumstances. *State v. Cullison*, 227 N.W.2d 121, 126 (Iowa 1975).

It is also true, however, that no formalistic sequence of warnings and record proof of defendant's knowledge of his confrontation right and that trial would continue in his absence is required in this area. Those contentions were rejected in *Taylor*. 414 U.S. at 19–20, 94 S.Ct. at 196, 38 L.Ed.2d at 177–78. The *Allen* and *Taylor* rules are found in revised rule 43 of the Federal Rules of Criminal Procedure and to a lesser extent in Iowa R.Crim.P. 25. Of course, defendant's right of confrontation does not carry a *right* to waive it. *State v. Davis*, 259 N.W.2d 812, 813 (Iowa 1977).

We examine this trial incident in light of the policy considerations expressed by the Supreme Court in *Allen*, 397 U.S. at 343, 90 S.Ct. at 1061, 25 L.Ed.2d at 359:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

While in this case defendant's conduct was not as flagrant as that in *Allen*, he verbally challenged a witness's veracity, used vulgar language, and persisted in profane and disrespectful statements to the court.

Trial court's discretion extends to determining when an accused's conduct necessitates warning and ultimately removal. *Accord, United States v. Kizer*, 569 F.2d 506, 506–07 (9th Cir.), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978); *State v. Riles*, 355 So.2d 1312, 1313 (La. 1978); *People v. Harris*, 80 Mich.App. 228, 229–30, 263 N.W.2d 40, 40–41 (1977); *State v. Corriz*, 86 N.M. 246, 247, 522 P.2d 793, 795 (1974); *State v. Williams*, 11 Or.App. 227, 230, 501 P.2d 328, 330 (1972). This record discloses no basis on which to conclude trial court abused its discretion in determining defendant was prohibitively "disorderly, disruptive, and disrespectful." *Allen*, 397 U.S. at 343, 90 S.Ct. at 1060, 25 L.Ed.2d at 359. Contrary to defendant's belief, his

earlier, out-of-court assault and injury of a jailer is relevant in weighing defendant's violent propensities and in determining whether the in-court disruption can be controlled without removal of the accused. *See People v. Booker*, 69 Cal.App.3d 654, 667–68, 138 Cal.Rptr. 347, 355–56 (1977).

 Defendant argues the warning was inadequate because it was given only once and "in the middle of the exchange which ultimately led to [defendant's] exclusion." Defendant does not attack the warning's content per se, but asserts trial court made no "judicial determination" he was able to waive a constitutional right.

*Allen* makes no requirement of repeated warnings or a warning separated in time from "last-straw" conduct. No case providing otherwise is cited. Moreover, defendant cannot deny the warning was heard; he responded specifically to the warning itself. Nor do we overlook the significance of the thirty-five minute recess defense counsel requested on the heels of defendant's initial outburst. Although the record is silent on this point we cannot believe competent counsel would not advise his client to avoid this conduct. *Cf. State v. Reeves*, 254 N.W.2d 488, 493 (Iowa 1977) (waiver validating guilty plea may be based on information supplied by counsel as well as trial court). The only question remaining is whether trial court's warning was understood.

 A jury determined defendant was competent to stand trial. Necessarily it found he had the mental capacity to appreciate the charge against him, understand the proceedings, and help conduct his defense. *See State v. Snethen*, 245 N.W.2d 308, 310 (Iowa 1976). We hold defendant was capable of effecting a valid waiver of his sixth amendment right of confrontation. His present contention that trial court should have made another "judicial determination that he understands his rights and is competent to waive them," quoting *Lynch v. Baxley*, 386 F.Supp. 378, 389 (M.D. Ala.1974), is answered by the chapter 783 proceeding.

 Defendant entirely fails to articulate what trial court failed to say or ascertain from him before finding he waived his confrontation right by his disruptive conduct. If defendant wishes to challenge the constitutionality of the procedure by which he was temporarily excluded from his trial, he must be specific. *See State v. Willis*, 218 N.W.2d 921, 923 (Iowa 1974) ("A constitutional challenge must be specific . . . ."). Our view of the entire record discloses no basis upon which to conclude defendant's waiver was invalid. Trial court did not violate defendant's sixth amendment right of confrontation.

## II. *Photographs.*

Several color photographs of the murder scene, the autopsy, and Moore's personal effects were admitted into evidence. Defendant contends trial court abused its concededly "considerable" discretion, *see State v. Triplett*, 248 Iowa 339, 350, 79 N.W.2d 391, 397–98 (1956), *cert. dismissed*, 357 U.S. 217, 78 S.Ct. 1358, 2 L.Ed.2d 1361 (1958), in admitting nine photos of the murder scene and autopsy. Timely objections to eight of these photos asserted they were repetitious, irrelevant, prejudicial, and inflammatory. Midway through presentation of this evidence defense counsel stipulated as to the cause of death.

 These photos are not particularly gruesome or repetitive. State has the right, undiluted by stipulation, to present relevant evidence of the crime committed. *State v. Fryer*, 243 N.W.2d 1, 7 (Iowa 1976). Medical witnesses referred to the locale of the murder scene, the victim's position, and the presence of personal effects in testifying about defendant's sanity. Trial court did not abuse its discretion.

## III. *Diminished capacity.*

 Lastly, defendant seeks reversal of his conviction because trial court failed to instruct on the defense of diminished capacity. No request for this instruction was made. No objection was taken to its absence. No complaint was made in the motion for new trial.

It is the trial court's duty to instruct a jury fully and fairly, even without request, but our adversary system imposes the burden upon counsel to make a proper record to preserve error, if any, in this factual circumstance by specifically objecting to instructions in their final form, requesting instructions and voicing specific exception in event they are refused.

Defendant's failure to make known to the trial court before the instructions were given to the jury his wish to so instruct deprives him of a basis for successful appeal in this court for such failure to instruct.

*State v. Sallis*, 262 N.W.2d 240, 248 (Iowa 1978).

It is particularly appropriate in this case to require preservation of instructional error. A successful defense of diminished capacity would preclude only a first-degree murder conviction. *See State v. Jacoby*, 260 N.W.2d 828, 836 (Iowa 1977). Competent counsel could well have made a deliberate, tactical decision to present the jury with an all-or-none choice. *See State v. Veverka*, 271 N.W.2d 744, 749 (Iowa 1978).

AFFIRMED.