# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-1882

———————

United States of America,

      Plaintiff - Appellee,

v.

Terry Lee Ward,

      Defendant - Appellant.

\*    Appeal from the United States
District Court for the
Eastern District of Arkansas.

———————

Submitted:  December 17, 2009
Filed:  March 29, 2010

———————

Before LOKEN, Chief Judge, BENTON, Circuit Judge, and VIKEN,[*] District Judge.

———————

LOKEN, Chief Judge.

A traffic stop led to a warrant search of Terry Lee Ward's recreational vehicle, where police seized a computer and CDs containing thousands of images of child pornography and, in a safe, a video of a twelve-year-old girl showering and Ward drying her off with a towel.  He was charged with one count of production and one count of possession of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2252(a)(4)(B).  Following an investigation that included other conduct, Arkansas authorities charged Ward with rape; he was convicted of that charge and sentenced to

———————

[*]The HONORABLE JEFFREY L. VIKEN, United States District Judge for the District of South Dakota, sitting by designation.

life in prison before trial of the federal charges. The same attorney represented Ward in both cases. On the first day of trial, prior to selecting a jury, Ward was disruptive. After warning Ward, the district court had him removed, and he was not present during any portion of the trial. The jury convicted him of both charges. He was sentenced to 300 months in prison on the production count and a concurrent 120 months in prison on the possession count. Ward appeals. Concluding he was prejudiced by a violation of his constitutional right to be present at trial, we reverse.

**I.**

Ward's federal trial was initially scheduled to begin on March 6, 2008. That day, before trial began, Ward and his attorney requested a recess to allow Ward to consider a plea offered by the government. Ward then agreed to plead guilty after his written objections were entered in the record. The court reviewed the objections, declared "I can't take his plea," ordered a mental examination, and continued the proceedings. Four months later, the Bureau of Prisons submitted a Psychological Evaluation opining that Ward understood the nature and consequences of the proceedings, could assist in his defense, and was considered responsible for the alleged offense conduct, but also noting that "behavioral issues are considered likely, given various statements by the defendant of 'fireworks' in the court."

The case was again called for trial on October 14, 2008. Ward appeared with his attorney.[1] Before the court began jury selection, Ward complained that he was not allowed to bring his legal papers to court. Defense counsel complained that Ward was "going off on tangents" instead of effectively assisting in the defense. Based on the prior competency determination, the court denied a further continuance and directed the prosecutor to ask the jail and the prison to send Ward's legal papers to defense

---

[1] A criminal trial may not proceed if the defendant is not present at its inception. Crosby v. United States, 506 U.S. 255, 262 (1993).

counsel.  During this discussion, Ward repeatedly interrupted defense counsel and the court.  The court admonished Ward "to write out what you want to tell your lawyer . . . . because if you've been in his ear, he can't listen to me."  Ward protested:  "The being quiet I got a problem with . . . .  The last time they tell me to be quiet, then they want to later say, because I didn't say something, then I can't object to it later."  The court replied, "It's going to be a real problem because I'll have you removed from the courtroom. . . .  If you interrupt me again or if you talk again without going through your lawyer, I'm going to send you to a cell and you can hear the trial from there."  The court returned to that subject a few moments later:

> THE COURT:  We can hear you talking up here [Mr. Ward]. Everybody in the courtroom can hear you talking and I've told you to write or be quiet.
>
> THE DEFENDANT:  I'm talking to my attorney.
>
> THE COURT:  You can write him a note.
>
> THE DEFENDANT:  I can't do that, Your Honor.  If you have someone I can dictate to and have them write it, because I can't do it.
>
> THE COURT:  Are you ready to go to the lock-up?
>
> THE DEFENDANT:  You can do whatever you want.
>
> THE COURT:  Let's move him -- he won't hush -- over his objection.
>
> THE DEFENDANT:  You cannot go further in this case without me present.  I prohibit you to do it.  You are not to go any further with any of my defense.  You have to wait until I'm here.  If he won't bring me --
>
> (Defendant removed from courtroom.)

Defense counsel then suggested giving Ward "a few minutes to cool down."

> THE COURT: Wasn't he the same way the last time we tried to start?

> MR. NELSON: Unfortunately he was, Your Honor.

> THE COURT: Been several months and he hasn't cooled down since, so I'm going to overrule your request, but save your exception.

After a brief recess, the court proceeded with jury selection in Ward's absence. When the jury was selected, the court addressed defense counsel:

> Mr. Nelson . . . I'd like for you to visit with your client and if he can pledge to you that he will act right, in other words, not be talking out loud and if he will communicate with you in writing when you're trying to listen to witnesses and me and the other lawyer and everything, that I will allow him to come back in the courtroom.

Before trial commenced that afternoon, defense counsel reported:

> [A]s the Court requested, I did discuss with my client . . . to see if he could comply with those three requirements. He indicated that he could not, for two possible reasons. One, that he doesn't feel he can write quickly enough to inform me of what he wants to inform me of. Two, he didn't get all his medication this morning at the jail.

Before start of the second day of trial, defense counsel reported:

> I did talk with him again. He cannot -- in talking with him, I don't see there's any way he could guarantee that he'd be quiet. I couldn't keep him on point even in the lock-up area. Your Honor, we would place a continuing objection to his inability to be in the courtroom.

-4-

Counsel advised the court that Ward still had not received his blood thinning medication at the jail and was having trouble hearing the trial proceedings being transmitted to his lock-up cell.

There was no discussion of Ward returning to the courtroom during the third day of trial, which consisted of the court's jury instructions, closing arguments, and the jury's two hours of deliberation. During deliberations, the jury sent a question asking, "Why was the defendant not in the courtroom?"

## II.

On appeal, Ward argues that his exclusion from the trial violated his Fifth and Sixth Amendment due process and confrontation rights. The Supreme Court has long held that, "One of the most basic of the rights guaranteed by the Confrontation Clause [of the Sixth Amendment] is the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338 (1970), citing Lewis v. United States, 146 U.S. 370 (1892). The right to be present, which has a recognized due process component, is an essential part of the defendant's right to confront his accusers, to assist in selecting the jury and conducting the defense, and to appear before the jurors who will decide his guilt or innocence.

While the defendant has a constitutional right to be present at trial, the right can be forfeited if, "after he has been warned by the judge that he will be removed . . . he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Allen, 397 U.S. at 343.[2] Relying on Allen, the government argues that

---

[2]The right may also be waived if the defendant is voluntarily absent after trial has begun, an issue not present in this case because Ward insisted on being present. See Taylor v. United States, 414 U.S. 17 (1973); Fed. R. Crim. P. 43(c)(1)(A).

the district court properly removed Ward, after warning, because he was a "disruptive, contumacious, stubbornly defiant" defendant. Id. at 343. But that argument pays too little heed to the narrower *holding* in Allen -- a defendant may be removed if he "insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Id. (emphasis added). As this holding makes clear, "[b]ehavior that is merely disruptive is insufficient under *Allen* to justify removal." Tatum v. United States, 703 A.2d 1218, 1223 (D.C. App. 1997). We review the decision to remove an unruly defendant for abuse of discretion. United States v. Williams, 431 F.3d 1115, 1119 (8th Cir. 2005).

In Allen, the defendant, conducting his own defense, began questioning prospective jurors at great length. When the judge interrupted, defendant argued with the judge abusively, threatened that the judge was "going to be a corpse," tore stand-by counsel's file, and threw the papers on the floor. Warned he would be removed, defendant declared, "There's not going to be no trial." When brought back to the courtroom after his first removal, defendant declared, "I'm going to start talking and I'm going to keep on talking all through the trial. There's not going to be no trial like this." 397 U.S. at 339-41. After being removed a second time, defendant told the judge he would behave, was allowed to return, and was present for the remainder of the trial. Similarly, our few cases upholding decisions to exclude the accused from a criminal trial have involved defendants whose conduct threatened the court's ability to conduct the trial. In Scurr v. Moore, a federal habeas case, the state court judge briefly removed "a disruptive and dangerous defendant" who brutally assaulted a jailer during a noon recess, disruptively and abusively interrupted a witness, and swore at the judge. 647 F.2d 854, 855-58 (8th Cir.), cert. denied 454 U.S. 1098 (1981). In Williams, the defendant was repeatedly removed for failing to discontinue a constant

-6-

barrage of meritless objections and interruptions that "threatened the continuation of the trial." 431 F.3d at 1119-20.[3]

In this case, Ward was removed before the voir dire of prospective jurors. Thus, we do not know whether he would have persisted in disruptive behavior to the point that it threatened continuation of the trial, or would have controlled his behavior in the presence of the jury. Unlike many reported exclusion cases, including <u>Allen</u> and <u>Scurr</u>, Ward's presence at trial did not pose an apparent risk of physical injury to anyone. For example, he did not threaten the judge or anyone else involved in the trial, he had not assaulted anyone outside the courtroom, and he was not charged with a crime of violence. A trial judge with a legitimate concern for safety in the courtroom faces a very different situation and clearly has discretion to take firm action. <u>See, e.g.</u>, <u>Bibbs v. Wyrick</u>, 526 F.2d 226, 227-28 (8th Cir. 1975), <u>cert. denied</u> 425 U.S. 981 (1976).

Ward was excluded for refusing the judge's command to stop talking to his attorney. The judge later instructed defense counsel to tell Ward he could not return unless he obeyed that command. Without question, a trial judge may control disruptive talking during a trial, but an absolute ban on the defendant talking to counsel is, in some circumstances, a violation of the defendant's right to counsel. <u>See</u> <u>Moore v. Purkett</u>, 275 F.3d 685, 688-89 (8th Cir. 2001). Here, both defense counsel and the judge wanted to be free of Ward's interruptions. Ward's absence no doubt ensured a smoother trial, probably to Ward's ultimate advantage. But the defendant's right to be present at trial is a more powerful, constitutionally mandated concern. A defendant's constitutional right to be present at his trial includes the right to be an irritating fool in front of a jury of his peers.

---

[3]The government cites <u>United States v. Cochran</u>, 475 F.2d 1080, 1083 (8th Cir.), <u>cert. denied</u> 414 U.S. 833 (1973), as a case upholding removal of the defendant after one outburst. But the only issue *decided* in that case was the denial of a mistrial.

A further problem in this case is the procedure following Ward's initial removal that resulted in excluding him from the entire trial. "Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." Allen, 397 U.S. at 343. The record reflects that, after the initial removal, the district court never conversed directly with Ward about his right to return. Rather, the court used defense counsel as an intermediary, conditioning the right to return on Ward agreeing never to talk to counsel during the trial, and accepting counsel's reports that Ward would not agree to that condition. In these circumstances, not only did the court forego an opportunity to determine whether Ward would agree to reasonable limitations, or was simply intent on frustrating the trial; it is also unclear whether the decision not to return was Ward's or his attorney's.

Using defense counsel as intermediary was a particularly serious issue in this case because the colloquy before Ward's removal suggested that he and defense counsel might disagree whether Ward should testify in his own defense. The right to testify is a fundamental constitutional right. Rock v. Arkansas, 483 U.S. 44, 49, 51-52 (1987). Only the defendant may waive that right. Ward repeatedly asserted that the prosecution had tampered with the video tape of the twelve-year-old girl, signaling that he might insist on testifying to that effect even if counsel advised otherwise. Though a knowing and voluntary waiver of the right may be based on the silence of a defendant who is in the courtroom when counsel rests without calling him, see Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998), how could Ward's waiver be knowing when he had not seen the version of the tape viewed by the jury, and how could the court be satisfied that defense counsel's resting without putting on any evidence reflected Ward's *personal* waiver of his constitutional right to testify? Some courts have held that an on-the-record hearing must be held before a custodial defendant may waive a fundamental constitutional right at trial. See United States v. Gordon, 829

F.2d 119, 125 (D.C. Cir. 1987).[4] We need not go that far to conclude that the post-removal procedures in this case were inadequate. See Ortega v. O'Leary, 843 F.2d 258, 261-62 (7th Cir.), cert. denied 488 U.S. 841 (1988), followed in Quarels v. Commonwealth, 142 S.W.3d 73, 78-80 (Ky. 2004).

For these reasons, we conclude that the district court violated Ward's right to be present when it removed him from the courtroom at the start of trial and did not cure that error by subsequently affording him a reasonable opportunity to return.

The government argues that any violation of Ward's right to be present at trial was harmless error. The government must prove that a violation of this constitutional right was harmless beyond a reasonable doubt. See United States v. Shepherd, 284 F.3d 965, 968 (8th Cir. 2002). In United States v. Crutcher, 405 F.2d 239, 244 (2d Cir. 1968), cert. denied 394 U.S. 908 (1969), the Second Circuit expressed doubt whether improperly excluding a defendant from participation in selecting the jury could ever be harmless error. Accord Kessel v. State, 161 S.W.3d 40, 48 (Tex. App. 2004) (punishment phase).

Here, Ward was absent for his entire trial. He did not assist in selecting the jury. He did not confront the witnesses and the evidence against him. He was never afforded the substantial right "to be brought face to face with the jurors at the time when the challenges were made," Lewis, 146 U.S. at 376, jurors who later asked the judge during deliberation why Ward had not been present. If more concrete harm than this is needed, which we strongly doubt, we note that the video of the twelve-year-old girl was the sole basis for Ward's conviction of *producing* child pornography, for

---

[4]There may be situations when it is appropriate to obtain a reliable waiver of the right to be present without returning a dangerous or recalcitrant defendant to the courtroom. See People v. Gutierrez, 63 P.3d 1000, 1002 (Cal.), cert. denied 540 U.S. 955 (2003) (defense counsel, a bailiff, and a court reporter went to the cell of a defendant who refused to leave, and reported the exact conversation to the judge).

which he received a 300-month sentence.  The video was not submitted to this court. See 8th Cir. R. 10A(a).  As described at trial, it includes nudity but appears not to depict "sexually explicit conduct" as defined in 18 U.S.C. § 2256(2) as a matter of law.  In that case, the district court should have been asked to make a preliminary review to avoid the potential prejudice of submitting prurient materials to the jury that could not properly be found to be child pornography.  See United States v. Kain, 589 F.3d 945, 951 (8th Cir. 2009).  Yet no such request was made, no objection was made to the court's overly-expansive instruction, and defense counsel's motion for acquittal on this count was inaccurate and confusing.  We conclude the government failed to establish that the error was harmless beyond a reasonable doubt.

The judgment of the district court is reversed, and the case is remanded for a new trial.  Ward's numerous pro se motions dealing with matters not resolved in this opinion  are without merit and are denied.

_____