# IN THE COURT OF APPEALS OF IOWA

No. 12-0230
Filed August 13, 2014

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**DONTRAYIUS EUGENE CAREY,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, James D. Coil (suppression hearing) and Nathan A. Callahan (trial), District Associate Judges.

Dontrayius Eugene Carey appeals the judgment and sentence entered upon his conviction of possession of a controlled substance. **CONVICTION AND SENTENCE VACATED, AND REMANDED FOR NEW TRIAL.**

Steven J. Drahozal of Drahozal Law Office, P.C., Dubuque, for appellant.

Thomas J. Miller, Attorney General, Linda Hines, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brook Jacobsen and Peter W. Blink, Assistant County Attorneys, for appellee.

Heard by Vaitheswaran, P.J., Doyle, J., and Zimmer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**ZIMMER, S.J.**

Dontrayius Eugene Carey appeals the judgment and sentence entered upon his conviction of possession of a controlled substance, second offense, in violation of Iowa Code section 124.401(5) (2011). He contends the district court erred in denying his motion to suppress evidence seized during a pat-down search of his person because it violated his constitutional right to be free from unreasonable searches and seizures. Carey also contends the court violated his constitutional right to be present at trial when he was removed from the courtroom during cross-examination of the State's first witness and never returned to the courtroom. Upon our review, we affirm the district court's denial of Carey's motion to suppress. We also conclude Carey's disruptive behavior justified his removal from the courtroom on the first day of trial. However, under the facts of this case, we conclude the district court abused its discretion when it continued Carey's exclusion for the remainder of his trial without personally informing Carey that he would be given the opportunity to return to his trial upon his assurance that there would be no further disturbances. Accordingly, we vacate Carey's conviction and sentence, and remand for a new trial.

**I. Background Facts and Proceedings.**

Shortly after 12:30 a.m. on August 20, 2011, several members of the Waterloo Police Department were dispatched to the intersection of Elm and Fowler Streets to investigate a report of "shots fired." When officers arrived at that location, they found the area "quiet and dead" but soon located five or six spent shell casings and some bullet fragments.

Officer Steven Bose assisted with the investigation at the crime scene and then began patrolling the perimeter of the area in his squad car. About twenty minutes after their investigation commenced, the police officers received a second radio call concerning the shooting incident. A police dispatcher advised that a caller had reported three males were walking down Courtland Street toward Elm Street peering into the side-yards of houses. The dispatcher also reported the caller thought the men were involved in the shooting incident. When he heard the second dispatch, Officer Bose was just a couple of blocks away from the location where the men were reported to be walking.

Officer Bose immediately drove to Courtland Street where he observed two men walking east on Courtland in the direction of Elm Street. When the men reached Elm Street, they looked to their right in the direction of squad cars parked at the scene of the shooting incident and then turned around and walked in the opposite direction. The intersection of Courtland and Elm is one block from the scene of the shooting incident.

Officer Bose turned his vehicle around and drove next to the two men. He rolled down his window and told them to stop. Both complied. Officer Bose then exited his patrol car and told the men to show him their hands. One of the men was Dontrayius Carey. The officer asked the men if they had seen or heard anything. Both denied hearing any shots. Because of the close proximity to the scene of a confirmed shooting incident, Officer Bose decided to perform a pat-down search to ensure the men did not have any weapons. During the pat-down, the officer observed sweat on Carey's forehead.

While patting down the outside of Carey's left rear pants pocket, Officer Bose felt an object through Carey's clothing. Based on his extensive experience with drug cases, including an assignment with a local K9 unit, he immediately believed the object he felt was a plastic bag of marijuana.

When Officer Bose removed the object from Carey's pocket, he observed a clear plastic sandwich bag with the end "completely twisted around just like typical marijuana is packaged." The bag contained tobacco as well as a small amount of marijuana, including some marijuana seeds and stems. Additional facts pertinent to the pat-down search are discussed in Division II of this opinion.

Based on the discovery of marijuana, Officer Bose searched the rest of Carey's person and emptied his pockets. In Carey's right front pocket, the officer discovered a "marijuana-filled cigar, a blunt." The contents of the cigar later tested positive for marijuana.[1]

The State filed a trial information charging Carey with possession of a controlled substance, third offense, a class "D" felony. At trial, the State conceded the charge should be second offense.

Carey's first attorney, Luke Guthrie, filed a motion to suppress, contending Officer Bose did not have the requisite "reasonable belief" that Carey was armed and dangerous to justify the initiation of a pat-down search. Guthrie was permitted to withdraw from representing Carey before the suppression hearing was held, and the district court appointed Mark Milder as Carey's new attorney. Carey chose to represent himself at the suppression hearing with Milder serving

---

[1] There is no evidence in the record regarding lab testing of the contents of the bag.

as standby counsel. He made this decision despite being advised of the dangers and disadvantages of self-representation.

After an evidentiary hearing, the district court denied the motion to suppress. The court concluded Officer Bose had reasonable suspicion to stop Carey and was justified in conducting a pat-down search of Carey's person. The court further found the officer had a reasonable belief the object he felt in Carey's pants pocket was a plastic bag of marijuana. Finally, the court concluded the search did not exceed the "plain feel" exception to the warrant requirement set forth in *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993).

Trial was held in December 2011. Carey's attorney filed a motion to withdraw the day before trial asserting a breakdown in the attorney-client relationship, which the district court denied. Carey chose to represent himself at trial, and the trial court ordered Milder to serve as standby counsel.

Before the jury was empaneled, Carey engaged in a heated exchange with the court over the nature and extent of his prior drug convictions. Carey continued speaking after the court warned him to "stop talking," and the court found him in contempt.[2] Afterward, the court denied the county attorney's motion to reinstate Milder as counsel, stating: "My impression is that Mr. Carey is quite competent. He's just trying to be obstructive, and I'm not going to tolerate that." Carey then conducted voir dire, and a jury was empaneled without incident.

Further problems arose during Carey's cross-examination of the State's first witness, Officer Bose. When Carey attempted to ask Officer Bose questions about the contents of a dispatch call log pertaining to the shooting incident, the

---

[2] The contempt finding is not at issue in this appeal.

State's hearsay objections were sustained. The court informed Carey he could use the document to refresh the officer's recollection and explained the document had not been admitted into evidence. Carey did not understand why the State's hearsay objections were being sustained, and he began to argue with the court. The court then excused the jury.

During the discussion that ensued outside the jury's presence, the court expressed its frustration with Carey's self-representation, opining that Carey was either being obstructive or was unable to understand the court's ruling and was therefore "not competent or qualified to go forward representing [himself]." The court threatened to again hold Carey in contempt if he ignored the court's "directives."

The trial court then tried to help Carey make an offer of proof concerning the dispatch report that Carey kept referring to during his cross-examination of Officer Bose. After some further discussion concerning that document, it became clear Carey still did not understand—or refused to accept—the reasons why he was not being allowed to refer to the contents of the report. At that point, the court stated, "Mr. Milder, from here on out, you are going to be counsel of record in this case." Carey strenuously objected to the court's decision to revoke his right of self-representation. Milder advised the court that he was not comfortable representing Carey, but he was ordered to take over as counsel by the court.

During a heated exchange between Carey and the trial court regarding the court's decision to have Milder take over the case, Carey continued standing even though the court told him to sit on six separate occasions. The court warned Carey four times that if he didn't comply with the court's directives, he

would be removed from the courtroom and trial would be held in his absence. Carey replied that if Milder was going to represent him, "we're not going to have a trial." The trial judge then ordered Carey removed from the courtroom, and the trial resumed with Milder representing Carey. The court instructed the jury not to draw any inferences from the fact Carey was no longer in the courtroom. Carey was not returned to the courtroom until his sentencing.

After the State's second witness testified, the court held another hearing outside the jury's presence to make a further record about Carey's exclusion from his trial. The court stated it was relying on Iowa Rule of Criminal Procedure 2.27(2)(b) to exclude Carey due to his disruptive behavior.

> He's not following the court's instructions, and he was both impudent and insolent in regards to the court's instructions, in my view, during a previous hearing outside the presence of the jury. And I directed him to have a seat, was trying to get him to sit down and be quiet. I don't know how many times on the record I asked him to sit down. I want the record to reflect he never did. He just kept talking and refused to be seated, at my direction. And I have never done this, but I think that based upon his conduct, his presence at the trial just could not continue.
>
> I want it clear, Mr. Milder—I don't know if he'll even talk to you—I want it clear, if you have a chance to talk to him and he says he's going to behave, he can come back anytime. And I want you to know that after the State has rested its case in chief, that I intend to have a hearing, with Mr. Carey present, in regards to his right to testify. And if he wants to testify at this trial, he's going to be allowed to. But if he's going to continue on in the same fashion that he has before, we're just not going to have him present.
>
> I also want to make a record that I concur with the representation of counsel, Mr. Milder, that Mr. Carey seems quite competent in terms of understanding things, and that's my impression of him, too. But he is just plain obstructive, and I'm not going to conduct a trial in that fashion.

After the State rested its case, the proceedings were adjourned until the following morning to allow Milder to "make contact at the jail and inquire of

[Carey] as to whether he wants to testify in this case or not." The court again stated it intended to bring Carey over in the morning to make a record on that issue,

> but I want him to be assured that if he is not cooperative, I'm not going to make any special effort on his behalf. He can come in the morning, and we can make a record on it, or he cannot, but I'm not going to put up with his disruption again.

The next morning, the court began the day's proceedings by making a record outside the jury's presence regarding whether Carey would be allowed to be present for the second day of trial. The court did not have Carey brought to the courtroom from the jail for that hearing. The court noted Milder had informed the court that Carey "did not want to talk to him (Milder)" when he went to see Carey at the jail the previous day. Milder elaborated that he had spoken to Carey "less than a minute" and Carey had become "verbally aggressive and threatened both my law license and also threatened physical violence against me if I was here today on his behalf." Milder stated he feared for his safety if Carey was in the courtroom and asked the court if Carey could be restrained if brought back to the courtroom.

> After considering Milder's report, the court made the following ruling:
>
> Well, I think it's fair to say that Mr. Carey has some history of violent behavior, so based upon all of that, I'm going to make a judicial finding in this case that Mr. Carey has waived his presence in the courtroom; that he has waived his right to testify at trial. I am not going to bring him over here and subject anybody to any sort of threat of physical violence in court proceedings.

Milder then rested without calling any witnesses for the defense.

Following the reading of instructions and final arguments, the jury found Carey guilty of possession of a controlled substance. Carey was not present

when the jury returned its verdict. The enhancement phase of the case was tried to the same jury that afternoon to determine whether Carey had a prior conviction for possession of a controlled substance that could be used to increase his punishment. Carey was not present for any of the enhancement trial. The jury found the State proved Carey had a prior qualifying conviction, and the court accepted the verdict and scheduled sentencing.

Carey filed a motion for new trial, based in part on the alleged violation of his right to be present at trial, which the court denied. The court subsequently sentenced Carey to two years in prison and imposed a fine and costs. This appeal followed.

## II. Motion to Suppress.

Carey first contends the district court erred in denying his motion to suppress evidence seized during a pat-down search. He asserts the search of his person exceeded the "plain feel" exception of the warrant requirement in violation of the Iowa and United States Constitutions.

## A. Scope of Review.

We review the alleged violation of a constitutional right de novo. *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004). In doing so, we make an "independent evaluation of the totality of the circumstances shown by the entire record." *Id.* Because of the district court's opportunity to evaluate the credibility of witnesses, we will give deference to the factual findings of the district court, but we are not bound by them. *Id.* We consider the evidence presented at the suppression hearing, as well as the evidence submitted at trial. *State v. Andrews*, 705 N.W.2d 493, 496 (Iowa 2005). Although we may interpret our

state's constitutional provisions more stringently than federal case law, *see State v. Pals*, 805 N.W.2d 767, 772 (Iowa 2011), Carey has not suggested a different state analysis or offered any reasons for a separate analysis. Accordingly, we resolve Carey's unreasonable search and seizure claims under existing federal standards. *State v. Dewitt*, 811 N.W.2d 460, 467 (Iowa 2012).

**B. Analysis.**

We begin with a brief overview of the applicable law. The Fourth Amendment of the United States Constitution and article 1, section 8 of the Iowa Constitution protect citizens from unreasonable search and seizures. A warrantless search is per se unreasonable unless it falls within one of the exceptions to the Fourth Amendment's warrant requirement. *State v. Bradford*, 620 N.W.2d 503, 506 (Iowa 2000). A *Terry* stop is one of those exceptions. *Terry v. Ohio*, 392 U.S. 1, 20-27 (1968).

Under *Terry*, police may detain persons in the absence of probable cause if the police have reasonable suspicion to believe criminal activity is taking place. *Id.* at 25-26. In addition, *Terry* permits a pat-down search of the person for weapons when the officer is justified in believing that the person may be armed and presently dangerous. *Id.* at 27. The protective search is limited and is not meant to discover evidence of crime. *Dickerson*, 508 U.S. at 373. If the protective search goes beyond what is necessary to determine if the suspect is armed, the search is no longer valid under *Terry* and its fruits must be suppressed. *Id.*

On appeal, Carey has not reasserted the claim made in his motion to suppress that Officer Bose did not have reasonable suspicion to stop him and

conduct a pat-down search.  Instead, he argues the district court erred in denying his motion to suppress when the court concluded the search of his person did not exceed the plain-feel exception to the warrant requirement set forth in *Minnesota v. Dickerson*.  For the reasons that follow, we disagree.

In *Dickerson*, the Supreme Court explained the plain-feel exception in the following manner:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.* at 375-76.

The Court then applied this test to the facts before it.  *Id.* at 377-78.  The Court concluded the officer who conducted the authorized pat-down search was not acting within the lawful bounds marked by *Terry* at the time he gained probable cause to believe a lump in Dickerson's jacket pocket was contraband. *Id.* at 378-79.  The officer never thought the lump was a weapon, and he determined the lump was crack cocaine only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket."  *Id.* at 378.  The officer then removed a small plastic bag containing crack cocaine from the defendant's pocket.  *Id.* at 369.  The Court concluded the plain-feel exception did not apply because the continued exploration of the jacket pocket after the officer concluded it contained no weapon was not authorized under *Terry* or any other exception to the warrant requirement.  *Id.* at 378-79.  Because this "further

search" was constitutionally invalid, the seizure of the cocaine was likewise unconstitutional. *Id.* at 379.

In reaching this conclusion, the Court acknowledged that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure. *Id.* at 375. The Court noted that regardless of whether an officer detects contraband by sight or by touch, the Fourth Amendment's requirement that the officer must have probable cause to believe the item is contraband before seizing it ensures against excessive seizures. *Id.* at 379.

With these principles in mind, we return to the facts before us in this appeal. Carey contends that, like the police officer in *Dickerson*, Officer Bose exceeded the plain-feel exception to the warrant requirement. Upon review of the record before the district court, we reach a different conclusion. Officer Bose has extensive experience with narcotics investigations. He has made hundreds of narcotics arrests in Black Hawk County and has had regular exposure to drug cases due to his assignment with a K9 Unit. He has extensive experience with how marijuana is packaged and sold.

Officer Bose testified he immediately recognized the contents of Carey's back pocket to be a plastic bag of marijuana during the pat-down search he conducted. He made this determination based upon the "very distinct feel" of the bag in Carey's pocket. He explained that smaller quantities of marijuana are usually tied in the corner of a sandwich bag and packaged very tightly with a knot. He testified that packaged marijuana has a different texture than other objects because of seeds and stems. He testified the object in Carey's pocket "felt like a dime sack of weed in a clear plastic bag with a swiveled end on it."

Officer Bose denied manipulating the object in any way before making the determination that it was a bag of marijuana. There is nothing in the record that contradicts this testimony.

When Officer Bose removed the object from Carey's pants pocket, he observed a clear plastic bag with the end "completely twisted around just like typical marijuana is packaged." The officer first observed tobacco in the bag, but he could also see green flecks of marijuana and marijuana stems.

Carey suggests that because the bag contained tobacco, Officer Bose should have retuned the bag to Carey and discontinued his search. We reject this contention because Officer Bose testified that the bag also contained marijuana. As the State points out, this testimony was not controverted.[3] We conclude Officer Bose was justified in continuing his search of Carey's person following discovery of the plastic bag. *See State v. Peterson*, 515 N.W.2d 23, 24-25 (Iowa 1994) (noting a search incident to an arrest requires no additional justification and may occur before formal arrest as long as it is substantially contemporaneous with it and probable cause for the arrest existed at the time of the search).

Like the district court, we conclude the State proved by a preponderance of the evidence that Officer Bose had probable cause to believe the item he felt in Carey's back pocket was a controlled substance. Accordingly, his seizure of the contraband during a lawful *Terry* pat-down search was justified pursuant to the plain-feel exception to the warrant requirement. *See State v. Harriman,* 737

---

[3] While Officer Bose testified he looked closer to observe the marijuana in the plastic bag, there is nothing in the record before us to suggest he had to open the bag or manipulate it in any way before discovering the presence of marijuana.

N.W.2d 318, 320–21 (Iowa Ct. App. 2007) (finding that because the officer was immediately certain the item was contraband without manipulating it, the item was properly discovered under the "plain-feel" exception to warrant requirement). We affirm the district court's denial of Carey's motion to suppress.

### III. Trial in Absentia.

Carey also contends he was "deprived of his constitutional rights when he was tried *in absentia* without having waived his right to be present."[4] He argues his exclusion from the courtroom on the first day of trial violated his constitutional right of confrontation. He also asserts the trial court should not have concluded he waived his right to be present at trial following the hearing held in his absence on the morning of the second day of trial. In response, the State argues the district court did not abuse its discretion in removing Carey from the courtroom on the first day of trial, due to his disruptive conduct. The State also asserts that the court was justified in continuing his exclusion for the remainder of the trial.

### A. Scope of Review.

We review constitutional claims, including Confrontation Clause claims, de novo. *State v. Shipley*, 757 N.W.2d 228, 231 (Iowa 2008). However, the question of when an accused's conduct necessitates warning and ultimately removal is one of district court discretion. *State v. Moore*, 276 N.W.2d 437, 440 (Iowa 1979). Accordingly, this court conducts a de novo review of the facts on which the court made its decision to remove Carey in order to determine whether

---

[4] The trial court revoked Carey's right to self-representation before determining Carey should be removed from the courtroom for disruptive conduct. Carey has not challenged the court's decision to have standby counsel take over. Therefore, we need not address that decision.

the trial court abused its discretion. *See State v. Hendren*, 311 N.W.2d 61, 62 (Iowa 1981) (reviewing de novo the facts upon which the court found defendant was voluntarily absent from trial before determining the trial court had discretion to proceed with trial in his absence).

**B. Analysis.**

Our supreme court has described *Illinois v. Allen*, 397 U.S. 337 (1970), as the controlling case regarding the issue of removal of a defendant from the courtroom due to disruptive behavior. *Moore*, 276 N.W.2d at 440. *Allen* makes clear that a disruptive defendant may not be permitted by his or her behavior to obstruct the orderly progress of a trial. 397 U.S. at 342-43. The Supreme Court recognized "at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant . . . : (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; [or] (3) take him out of the courtroom until he promises to conduct himself properly." *Id.* at 343-44.

After acknowledging that the Confrontation Clause of the Sixth Amendment guarantees an accused's right to be present at every stage of trial, the *Allen* Court confirmed that an accused may waive this constitutional right through misconduct. *Id.* at 342-43. In order to be removed from trial, *Allen* requires (1) a defendant's disruptive behavior, (2) a warning from the trial court that continued disruptive behavior will result in removal, and (3) continued conduct that is "so disorderly, disruptive, and disrespectful of the court" that trial cannot be carried on with the defendant in the courtroom. *Id.* at 343. However, "[o]nce lost, the right to be present can, of course, be reclaimed as soon as the

defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.*

The *Allen* rules have been incorporated in Rule 43 of the Federal Rules of Criminal Procedure and in Iowa Rule of Criminal Procedure 2.27. *Moore*, 276 N.W.2d at 440. Our rule 2.27 states in pertinent part:

> a. When a defendant engages in conduct seriously disruptive of judicial proceedings, one or more of the following steps may be employed to ensure decorum in the courtroom:
> (1) Cite the defendant for contempt.
> (2) Take the defendant out of the courtroom until the defendant promises to behave properly.
> (3) Bind and gag the defendant, thereby keeping the defendant present.

Iowa R. Crim. P. 2.27(4).

With these principles and rules in mind, we now examine the circumstances that led to Carey's initial removal from trial, as well as the trial court's decision to continue Carey's exclusion from the courtroom following a hearing on the morning of the second day of trial. Our consideration of Carey's claims of error requires us to address three issues: first, Carey's conduct; second, the sufficiency of the trial court's warnings to Carey before removal; and third, the procedures following Carey's initial removal that resulted in his exclusion from the entire trial. We now address each of these issues in turn.

**1. Carey's conduct.**

Under *Allen*, 397 U.S. at 343, a defendant waives his right to be present at trial if the defendant engages in a "manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Iowa Rule of Criminal Procedure 2.27(4), which incorporates the

alternatives set forth in *Allen*, states a defendant may be removed if he or she engages in "seriously disruptive" behavior.

Carey claims his behavior on the first day of trial did not rise to the level necessary to justify the court's decision to remove him from the courtroom. We disagree. During proceedings held outside the jury's presence, Carey adamantly refused to accept the trial court's decision to have Mr. Milder represent him for the duration of the trial. Carey also defied the court's request that he sit down on six occasions. In addition, he kept arguing with the court despite four warnings that his conduct could lead to his removal from the courtroom. He ignored the district court's order to be quiet. The trial court described his behavior as "insolent and impudent."

The proper administration of justice requires that all court proceedings be conducted with dignity, order, and decorum. *See Schroedl v. McTague*, 169 N.W.2d 860, 867 (Iowa 1969) ("A trial court has the duty to control and conduct its court in an orderly, dignified and proper manner."). Our supreme court has stated that "'trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.'" *Moore*, 276 N.W.2d at 440 (quoting *Allen*, 397 U.S. at 343). This discretion extends to determining when an accused's conduct necessitates warning and ultimately removal from the courtroom. *Id.*

It is true that Carey's behavior falls short of the defendant's conduct in *Illinois v. Allen*.[5] However, this "is of little persuasive value"; the defendant's

---

[5] In that case, Allen was representing himself during voir dire when he began arguing with the trial judge "in a most abusive and disrespectful manner," leading the court to

conduct in *Allen* does not set a bar below which removal in unjustified. *See Foster v. Wainwright*, 686 F.2d 1382, 1386-88 (11th Cir. 1982) (finding the defendant was validly removed from the courtroom for interrupting proceedings and failing to stop talking and sit down as directed, even though such behavior is "not nearly as extreme" as the defendant's in *Allen* and "fell short" of the behavior of most defendants whose removal from trial has been upheld) *cert. denied*, 459 U.S. 1213 (1983). We believe Carey's conduct was clearly sufficient to require a response from the trial court.

We conclude Carey was removed from the courtroom only after engaging in conduct that was seriously disruptive. His conduct prevented the trial from proceeding in an orderly manner and violated the decorum of court proceedings. The management of the courtroom is subject to the trial court's discretion, and great deference must be accorded to its decision. *Allen*, 397 U.S. at 343. We conclude the trial court did not abuse its considerable discretion in removing Carey from the courtroom pursuant to rule 2.27(4). We further find Carey's initial removal did not violate his constitutional rights.

---

appoint standby counsel to represent him. *Allen*, 397 U.S. at 339-40. Like Carey, Allen continued to talk, stating the appointed attorney was not going to act as his lawyer. *Id.* However, Allen finished his remarks by stating, "When I go out for lunchtime, you're (the judge) going to be a corpse here," and then tore his attorney's file and threw the papers on the floor. *Id.* at 340. The court warned Allen that another outburst would lead to his removal from the courtroom, but Allen continued to state there would be no trial, indicating he would obstruct it even if put in shackles, a straightjacket, and had his mouth taped shut. *Id.* After more "abusive remarks," he was removed. *Id.* Allen was returned to the courtroom before trial began and instructed he could remain for trial if he "behaved" and did not interfere with the trial. *Id.* But once again Allen became uncooperative after disagreeing with his attorney's request to remove witnesses from the courtroom, stating: "There is going to be no proceeding. I'm going to start talking and I'm going to keep on talking all through the trial. There's not going to be no trial like this." *Id.* at 341.

**2. The sufficiency of the trial court's warning.**

The second question we must address is whether Carey received an adequate warning his disruptive behavior would result in removal. Carey contends the warning he was given was constitutionally inadequate because the court "never informed him that [his] continued behavior could be construed as a waiver." Carey has cited no case supporting his contention that a trial judge is constitutionally required to specifically inform a disruptive defendant that his behavior could be construed as a waiver of his right to be present a trial. We do not believe our controlling case law supports the argument Carey has advanced.

Our supreme court has addressed a claim that a warning given to a disruptive defendant before his removal was inadequate. *Moore*, 276 N.W.2d at 441. In *Moore*, the defendant interrupted testimony and was disorderly, disruptive, and disrespectful. *Id.* at 439. During a heated exchange, the trial court ordered Moore removed after a single warning. *Id.* The trial court stated, "If you continue with your outbursts, you will be removed from this courtroom." *Id.* In rejecting the claim that the trial court's warning was inadequate, the supreme court observed that "no formalistic sequence of warnings and record proof of defendant's knowledge of his confrontation right and that trial would continue in his absence is required in this area." *Id.* at 440 (citing *Taylor v. United States*, 414 U.S. 17, 19 (1973), a case addressing a defendant's voluntary absence from trial). The supreme court also noted that *Illinois v. Allen* established "no requirement of repeated warnings or a warning separated in time from 'last-straw' conduct." *Id.* at 441. Like the decision to ultimately remove a defendant from the courtroom, the determination of when an accused's conduct

necessitates warning is within the trial court's discretion. *State v. Edwards*, 507 N.W.2d 393, 399 (Iowa 1993)*.*

In the case before us, the trial court warned Carey four separate times that he would be removed if he failed to comply with the court's directives. Two of those warnings included an advisory that trial would continue in Carey's absence. Carey's response to the trial court's warnings reveals that he heard and understood the court's admonishments—he simply refused to heed them. We conclude Carey was adequately warned.

**3. The procedures followed after Carey's initial removal.**

Finally, Carey argues his constitutional right to be present was violated when the district court continued his exclusion from the courtroom for the balance of his trial following a hearing held on the morning of the second day of trial. In response, the State contends the district court did not abuse its discretion in concluding Carey would be seriously disruptive if returned to the courtroom. For the reasons that follow, we conclude the district court abused its discretion by failing to provide Carey with a reasonable opportunity to return to the courtroom.

There is no dispute that a defendant who has been removed from the courtroom can reclaim the right to be present if willing to engage in appropriate conduct. *Allen*, 397 U.S. at 343. In *Allen*, the defendant was twice allowed to return to the courtroom after agreeing to conduct himself properly. *Id.* at 340-41. Similarly, in Iowa's leading case regarding removal, the defendant was excluded for only a brief period and then returned following the next recess. *Moore*, 276 N.W.2d at 439. Iowa Rule of Criminal Procedure 2.27 contemplates returning a defendant to the courtroom following removal. Rule 2.27(4)(a)(2) states the court

may "[t]ake the defendant out of the courtroom *until the defendant promises to behave properly.*" (Emphasis added.)

In addition, the American Bar Association's standards recommend that the trial court afford a removed defendant an on-the-record opportunity to return to the courtroom "at appropriate intervals." *ABA Standards for Criminal Justice: Special Functions of a Trial Judge* 6-3.8, at 65 (3d ed. 2000). In interpreting Federal Rule 43, the Federal Judicial Center's *Benchbook for U.S. District Court Judges* § 5.01, at 65 (6th ed. 2013), states: "At the beginning of each session, the court should advise the defendant that he or she may return to the courtroom if the defendant assures the court that there will be no further disturbances." The Iowa Bench Book, 2-12 to 2-13 (1999), recommends the following procedures if the court decides to remove the defendant following a disruption:

> (1) Following the dismissal of the jury, the defendant should be removed.
> (2) Defendant should remain in the courthouse while trial is in progress.[6]
> (3) At reasonable intervals (generally recess), the defendant should be given a briefing by counsel of the progress of the trial.
> (4) Upon reconvening in the morning and following lunch, the defendant should be brought to the courtroom and given the opportunity to return to the courtroom with appropriate behavior.
> (5) Admonition to the jury upon their return to the courtroom following removal of the defendant.

We now examine the post-removal procedures utilized in this case.

At the time the district court first ordered Carey removed from the courtroom, it did not inform him he could return if he behaved properly. We believe such an advisory is desirable; however, *Illinois v. Allen* does not make it

---

[6] Due to the discrepancy in resources available in individual counties, we recognize it may not be possible for the defendant to remain in the courthouse while trial is in progress.

an absolute requirement. *See Scurr v. Moore,* 647 F.2d 854, 858 (1981). On the other hand, we believe the circumstances that subsequently led to Carey's exclusion from his entire trial are problematic.

The record reveals the district court never brought Carey before it to give him the opportunity to return to the courtroom with appropriate behavior. Instead, the trial court used defense counsel as an intermediary, directing counsel to talk to Carey about being present in the courtroom and his right to testify. Counsel's attempt to discuss those issues with Carey at the jail after the first day of trial was not productive.

The following morning, Milder informed the trial court that Carey had threatened him (Milder) at the jail the previous day during a conversation that "was probably less than a minute long." Based on counsel's report, and after indicating Carey had "some history of violent behavior," the district court found Carey had waived his right to presence in the courtroom, as well as his right to testify.[7] Carey was not present in the courtroom when the court made its rulings, and the court never spoke directly with Carey regarding the threat[8] Milder reported or Carey's willingness to abide by the court's rules. Carey then remained in jail for the duration of his trial.

---

[7] Although our supreme court has held the defendant's out-of-court conduct is relevant, *State v. Webb*, 516 N.W.2d 824, 830 (Iowa 1994), Carey's convictions involving violent behavior were remote in time from his trial. On the other hand, in *Moore*, the defendant assaulted and injured a jailer during the period the trial was being held. *See* 276 N.W.2d at 440-41 (holding an "earlier, out-of-court assault and injury of a jailer is relevant in weighing defendant's violent propensities and in determining whether the in-court disruption can be controlled without removal of the accused"). Even then, Moore was only removed from the proceedings for twenty-five minutes of testimony before being returned. *Id.* at 440-41. In contrast, Carey was excluded from the courtroom for not only the remainder of the first phase of his trial and the verdict, but the entire second phase of his bifurcated trial without having engaged in any assaultive behavior.

[8] At sentencing, Carey denied ever threatening Milder.

In *United States v. Ward*, 598 F.3d 1054, 1060 (8th Cir. 2010), the Eighth Circuit held the defendant's right to be present at trial was violated on facts similar to the case at bar. In *Ward*, the defendant was removed from the courtroom after continually interrupting his attorney and the judge prior to the start of trial. 598 F.3d at 1056-57. The trial court then delegated the task of discerning whether the defendant could conduct himself appropriately to his attorney. *Id.* at 1057. Based on the attorney's representations, the defendant was never returned to the courtroom. *Id.* The Eighth Circuit expressed its concern with this procedure:

> In these circumstances, not only did the court forego an opportunity to determine whether Ward would agree to reasonable limitations, or was simply intent on frustrating the trial; it is also unclear whether the decision not to return was Ward's or his attorney's.

*Id.* at 1059.

The Eighth Circuit also found the use of defense counsel as an intermediary and the trial court's reliance on counsel's representations was "a particularly serious issue" because the colloquy before the defendant's removal suggested that he and his defense counsel might disagree over whether he should testify in his own defense, raising questions as to whether the defendant knowingly and voluntarily waived that right. *Id.* We believe the concerns expressed by the Eighth Circuit are pertinent to Carey's case.

Under the circumstances presented here, we find the district court abused its discretion in excluding Carey from the remainder of the trial without returning him to the courtroom to conduct an in-person, on-the-record assessment of whether he was willing to conduct himself consistently with the decorum and

respect judicial proceedings require. It is possible a hearing with Carey present would have revealed he remained unwilling or unable to control his disruptive behavior and could not be returned to the courtroom. However, because he was never offered on the record an opportunity to reclaim his right to be present in the courtroom upon the assurance of good behavior, we cannot be sure.

We also conclude the brief record made on the second day of trial in Carey's absence did not sufficiently support the trial court's decision to continue Carey's exclusion. Carey never became assaultive during trial, and the record on appeal does not reveal that he ever misbehaved in the jury's presence. As we have mentioned, defense counsel was unable to have a meaningful conversation with Carey regarding the issues the court directed counsel to discuss with his client.

We believe the failure to conduct a hearing with Carey present invites questions regarding whether Carey wished to have witnesses called in his defense or wished to testify on his own behalf.[9] Like the Eighth Circuit, we do not recommend using defense counsel as an intermediary to address issues such as these. Using defense counsel as an intermediary in this case placed counsel in a very difficult position and eventually placed him at odds with his client regarding what Carey said to Milder at the jail.

Before concluding, we wish to make clear that we do not read *Illinois v. Allen* as requiring the return of every defendant who has been removed from the courtroom simply upon a verbal promise to behave. *See United States v. Munn*,

---

[9] There is no record of Carey's wish to testify in his defense, nor any on-the-record waiver of that right.

507 F.2d 563, 568 (10th Cir. 1974) ("We do not deem the foregoing language [quoting *Allen*], however, to be an absolute mandate dictating the return of every defendant who has been removed from the courtroom simply on his verbal promise to reform."). In some instances, prior conduct may clearly demonstrate that such a promise has no value, and we believe the trial court has the discretion to evaluate the sincerity of a promise to reform. *See id.*

For the above reasons, we conclude the post-removal procedures in this case were inadequate. We conclude the district court abused its discretion by failing to provide Carey a reasonable opportunity to attempt to reclaim his right to be present in the courtroom after removing him on the first day of trial.

### IV. Summary.

We conclude the contraband found on Carey's person was properly discovered pursuant to the plain-feel exception to the warrant requirement; therefore, the district court properly denied the defendant's motion to suppress. We agree the trial court acted within its discretion in removing Carey from the courtroom on the first day of trial. However, we conclude the trial court abused its discretion in continuing Carey's exclusion from trial without conducting an on-the-record hearing with Carey present to determine whether Carey could be returned to the courtroom. Accordingly, we vacate the defendant's conviction and sentence, and remand for a new trial.

**CONVICTION AND SENTENCE VACATED, AND REMANDED FOR NEW TRIAL.**